**Frank B. SAVAGE, Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

No. 94–503.

United States Court of Veterans Appeals.

Argued May 19, 1997.

Decided Nov. 5, 1997.

Micha Barach, Washington, DC, for appellant.

Rudrendu Sinhamahapatra, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and R. Randall Campbell, Deputy Assistant General Counsel, Washington, DC, were on brief, for appellee.

Sean Kendall, Boulder, CO, for National Organization of Veterans Advocates as amicus curiae.

Robin Duncan Culbertson, of the National Veterans Legal Services Program, Washington, DC, for American Legion as amicus curiae.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

KRAMER, Judge:

The appellant, Frank B. Savage, appeals a March 16, 1994, decision of the Board of Veterans' Appeals (BVA or Board) that denied a claim of service connection for a right hip disability after determining that new and material evidence had been submitted to reopen the claim (claim 1); denied service connection for arthritis of multiple joints, other than the right hip (claim 2); and found not well grounded a claim of secondary service connection due to service-connected malaria for arthritis of multiple joints other than the right hip (claim 3). For the reasons that follow, the Court will affirm the Board decision.

## I. BACKGROUND

The appellant had active military service in the U.S. Army from April 1940 to July 1945. Record (R.) at 32, 35, 133, 140. His service medical records (SMRs) show, inter alia, several bouts of malaria (R. at 36, 38, 41, 53, 59, 61, 63–64, 66–67, 69). In July 1941, his SMRs noted a strain of the lumbar region as a result of a fall while descending a companionway. R. at 58. Hospital records from April 1942 reported that the appellant complained of back pain and was given heat treatments to the lumbar region. R. at 77, 79. Examinations in April 1942 and June 1943 reported no abnormalities of the bones, joints, or muscular system. R. at 75, 101. In February 1944, the appellant was admitted to the orthopedic clinic with complaints of back pain of two years' duration. R. at 120–21. A history of injury to the back two years earlier and re-injury two weeks earlier was noted. *Id.* An x-ray of the lumbar spine

was negative. *Id.* The appellant's July 1945 separation examination reported musculoskeletal defects as "none." R. at 131.

In February 1947, the appellant filed with a VA regional office (RO) a claim of service connection for, inter alia, malaria. R. at 136. The RO granted service connection at 0% disabling for malaria. R. at 146.

A December 1978 x-ray report noted that bones in the right wrist were mildly osteoporotic. R. at 163. A March 1981 x-ray report noted a five-year history of a septic right ankle and an impression of severe degenerative disease in the right ankle. R. at 167. An April 1981 x-ray report revealed findings consistent with gouty arthritis of the right elbow. R. at 170. A May 1981 VA hospital report noted that the appellant had developed bursitis following trauma to the right elbow approximately five years earlier. R. at 172, 176. In August 1981, the RO denied an increased rating for the appellant's service-connected malaria and denied service connection for a hip injury, although the record does not reflect that the appellant ever filed a claim with respect to the latter. R. at 181. An October 1981 x-ray report noted a history of right hip pain for several months, which was noted to be possibly post status to an injury in 1947. R. at 185. The x-ray report noted mild degenerative spurring in the lumbar spine; however, x-rays of the hip and pelvis were normal. *Id.* In an August 1984 VA examination, the examiner reported, inter alia, limited external rotation of the left hip. R. at 252. A February 1985 x-ray report noted symmetrical mild degenerative arthritis in both hips. R. at 257. In August 1985 VA progress notes, the examiner noted that right hip pain had begun approximately two or three weeks earlier. R. at 263. Later that same month, an x-ray report of the right hip noted that "[t]he lateral margin of the ilium is indented suspicious of possibly some old trauma." R. at 262. The x-ray report of the lumbosacral spine noted, inter alia, "an old compression fracture of the vertebral body of L-2" and "areas of degenerative spondylosis with some rather prominent bony spurring." *Id.* Later that same month, VA progress notes reported that the appellant had a long history of low back and right hip pain since an injury in the service. R. at 265. In December 1985, VA progress notes revealed a long history of right hip, knee, and foot pain and indicated that there was history of trauma. R. at 269. The notes described the hip and knee pain as rare and mild. *Id.*

In February 1990, the appellant filed a claim of service connection for arthritis of multiple joints as secondary to his service-connected malaria, and requested that his claim of service connection for a right hip disability be reopened. R. at 284. In March 1990, the RO denied service connection for arthritis of multiple joints, secondary to the service-connected malaria, and determined that new and material evidence had not been submitted to reopen the claim of service connection for a right hip disorder. R. at 288–89. The appellant filed a timely Notice of Disagreement (R. at 293) and a VA Form 1–9, Appeal to the Board of Veterans' Appeals (Form 1–9) (R. at 303–04).

In a January 1991 hearing at the RO, the appellant testified that during service he had fallen down stairs on a ship, landed on his hip and back, and was hospitalized for approximately 10 days. R. at 307–08. He reported that he was limping at the time of his discharge (R. at 309) and had received heat treatments and massages over the years, although not through the VA system (R. at 311). He further contended that his multiple-joint problems had developed as a result of his service-connected malaria. R. at 314–15. In February 1991, a VA hearing officer confirmed the denial of service connection for arthritis of multiple joints, secondary to the service-connected malaria, and determined that no new and material evidence had been submitted to reopen the claim of service connection for a right hip disorder. R. at 321–23. In an August 1991 decision, the BVA remanded the multiple-joint arthritis and right hip claims for further evidentiary development and readjudication and referred a claim of service connection for residuals of a back injury to the RO for further development. R. at 351–354.

In August 1991, a VA outpatient treatment record noted arthritis of the right hip, knees, and ankles. R. at 358. In a statement in support of claim dated March 1992, which referred, inter alia, to claims for hip and back

disabilities, the appellant stated that he "need[ed] comp exam." R. at 384. In May 1992, the RO denied, inter alia, service connection for a back condition, determined that no new and material evidence had been submitted to reopen the claim of service connection for a right hip disorder, and confirmed the denial of service connection for arthritis of multiple joints. R. at 391–92. In a June 1992 Form 1–9, the appellant noted "[b]ack problem of 2/44 [and] hip at same time still bothers me and I walk with a limp." R. at 420–21.

In a July 1992 statement, Robert G. Haling, a chiropractor, reported that he had initially seen the appellant in September 1980 for complaints of low back and hip pain. Dr. Haling noted the appellant's history of an injury incurred by the appellant's falling down steel steps on a ship in 1941, and he recorded the appellant's statement that he had walked with a limp ever since. Supplemental (Suppl.) R. at 1. In a September 1992 hearing, the appellant and his wife testified that he had experienced bouts of malaria over the years (R. at 424–28) and continual hip pain (R. at 428–30). Later that same month, a VA hearing officer confirmed the denial of service connection for arthritis of multiple joints, and determined that no new and material evidence had been submitted to reopen the claim of service connection for a right hip disorder. R. at 434–36.

On March 16, 1994, in the decision here on appeal, the BVA, after first finding that all relevant evidence had been obtained by the RO, determined that (1) new and material evidence had been presented to reopen the claim of service connection for a right hip disorder but found that a right hip disorder was not incurred in or aggravated by service; (2) arthritis of multiple joints other than the right hip was not incurred in or aggravated by service; and (3) a well-grounded claim had not been submitted for service connection for arthritis of multiple joints, secondary to the appellant's service-connected malaria. The appellant filed a timely appeal to the Court, arguing, inter alia, that the BVA had breached the duty to assist by failing to provide a medical examination and expert opinion as to the relationship between the appellant's present disability and his injury in service. Brief (Br.) at p. 17.

In a March 19, 1996, single-judge memorandum decision, the Court affirmed the BVA decision, holding that the appellant had not submitted well-grounded claims for either direct or secondary service connection for arthritis of multiple joints other than the right hip, that no new and material evidence had been submitted to reopen a claim of service connection for a right hip disability, and that, as a consequence, the duty to assist did not attach. *Savage v. Brown,* No. 94–503, 1996 WL 140584 (Vet.App. Mar.19, 1996). On April 2, 1996, the appellant filed a timely motion for panel review arguing that both a well-grounded claim and new and material evidence had been presented. Appellant's Motion for Panel Review of Memorandum Decision at 2–4. The appellant's motion for panel review did not raise any issue with respect to or otherwise reference VA ADJUDICATION PROCEDURE MANUAL, M21–1 [hereinafter MANUAL M21–1], Part III, para. 1.03(a), cited *infra,* which was issued in February 1996. (The Court notes that the appellant's brief was filed on August 18, 1995, his reply brief was filed on December 21, 1995, and paragraph 2.10(f), cited *infra,* of Part VI of the MANUAL M21–1 was issued in August 1996.) On June 19, 1996, the Court denied the appellant's motion for panel review and entered judgment. On July 3, 1996, the Court recalled its judgment, revoked its June 19, 1996, order, and granted the appellant's motion for panel review. In an order dated July 9, 1996, the Court stated:

The Court granted the motion for panel review in order to determine what effect the application of 38 C.F.R. § 3.303(b) (1995) may have on the appellant's claims, including the underlying issues of what constitutes continuity of symptomatology and what effect that construct has on presenting evidence sufficient to well ground or to reopen a claim, as well as subsequently determining entitlement to service connection. Accordingly, it is

ORDERED that each party file, within 30 days after the date of this order, a legal memorandum *addressing the following issues:* (1) What evidence of record constitutes evidence of continuity of symptomatology under section 3.303(b); (2) what effect does section 3.303(b) have on

making evidence sufficient for purposes of well-groundedness under *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993), and reopening under *Moray v. Brown,* 5 Vet. App. 211, 214 (1993); *cf. Falzone v. Brown,* 8 Vet.App. 398, 405–06 (1995); (3) what effect does section 3.303(b) have on entitlement to service connection, *see Godfrey v. Brown,* 7 Vet.App. 398, 404, 407 (1995); and (4) whether section 3.303(b) applies only to chronic diseases as specifically listed in 38 U.S.C. § 1101(3); 38 C.F.R. §§ 3.309(a), 3.307(a)(3) (1995).

The Court invites any other interested person or entity, as amicus curiae, to submit, within 30 days after the date of this order, legal memoranda *addressing the issues stated above.*

*Savage v. Brown,* U.S. Vet.App. No. 94–503 (Order July 9, 1996) (emphasis added).

On November 20, 1996, after reviewing the parties' responses to its July 9, 1996, order the Court stated:

The Court granted the motion for panel review *in order to determine what effect the application of 38 C.F.R. § 3.303(b) (1995) may have on the appellant's claims,* including the underlying issues of what constitutes continuity of symptomatology and what effect that has on presenting evidence sufficient to well ground or to reopen a claim, as well as subsequently determining entitlement to service connection. On July 9, 1996, the Court ordered the parties to submit legal memoranda addressing a number of issues. After reviewing the parties' responses, the Court believes that further briefing is necessary.... Accordingly, it is

ORDERED that each party file, within 30 days after the date of this order, a legal memorandum *addressing the following issues:*

(1) If the continuity of symptomatology provisions in section 3.303(b) are construed as eliminating the need for medical nexus evidence in certain cases (*see Grottveit* [, 5 Vet.App. at 93] (generally requiring "competent medical evidence" where "the determinative issue involves medical causation or medical diagnosis")): (a) Must there be a diagnosis of a current chronic disease; (b) what type of evidence is required to show that the condition was noted during service; (c) must continuity of symptomatology be established with evidence that is contemporaneous to the presence of the symptomatology or can it be established by present evidence that references past symptomatology; (d) must the evidence of continuity of symptomatology be documented in medical records or can it be otherwise documented or presented; (e) must there be medical-opinion evidence that the symptomatology is continuous and that the symptoms showed to have continued are related to the current condition; (f) must there be medical-opinion evidence showing a relationship between the condition noted in service and the postservice symptomatology as to which continuity is asserted; and (g) must there be medical-opinion evidence that the condition noted in service and the current condition constitute the same disease (although not necessarily showing that there is a causal relationship between the two)?

(2) Section 3.303(b) states that continuity of symptomatology is required "to support the claim." Does this language impose a restriction that service connection cannot be awarded in nonchronic inservice claims unless there is continuity of symptomatology? If § 3.303(b) is construed as imposing such a restriction, is such a constraint upon the award of service connection consistent with the terms of 38 U.S.C. § 1110?

(3) Are the answers to any of the foregoing questions set forth in or derived from any publicly available Department of Veterans Affairs issuances or General Counsel opinions, and, if so, please cite them and provide copies?

It is further

ORDERED that the Clerk *invite interested amici curiae to submit memoranda on the above questions* within the time allowed to the parties.

*Savage v. Brown,* U.S. Vet.App. No. 94–503 (Order Nov. 20, 1996) (emphasis added).

Subsequently, the Clerk of the Court issued an order, dated April 11, 1997, that set oral argument for May 19, 1997. The order

was silent as to the scope of the issues to be considered at oral argument. *Savage v. Brown,* U.S. Vet.App. No. 94–503 (Order April 11, 1997).

Both the National Organization of Veterans Advocates and the American Legion submitted amici filings. The American Legion's memorandum of law, inter alia, referenced MANUAL M21–1, Part III, para. 1.03(a) (Feb. 23, 1996), and Part VI, para. 2.10(f) (Aug. 5, 1996), as relevant to the disposition of the appeal, arguing for a remand to fulfill the duty under those provisions to develop the claim, even if the appellant were not otherwise to prevail in his appeal. Br. at 23–24. On May 19, 1997, oral argument was held, during which, inter alia, the appellant abandoned his appeal with respect to claim (3) and both the appellant and the amicus curiae American Legion reasserted entitlement to relief under the MANUAL M21–1.

## II. ANALYSIS

### A. Claim 3

As a consequence of the appellant's abandonment of claim 3, the Court will not review it. *See Bucklinger v. Brown,* 5 Vet.App. 435, 436 (1993).

### B. Claim 1—Without Regard to 38 C.F.R. § 3.303(b)

As indicated in part I, *supra,* in 1981 the RO denied service connection for a hip injury, even though a review of the record on appeal indicates that the appellant had not yet filed a claim for this condition. In 1994, the BVA denied a claim of service connection for this condition after determining that new and material evidence had been submitted to reopen the claim. The Court need not decide whether the appellant's claim is an initial claim or one to reopen because, regardless, the result is the same because the appellant has not met either prerequisite threshold for having his claim decided on the merits.

As to an initial claim, the appellant has the burden of submitting evidence sufficient to justify a belief that his claims of service connection are well grounded. *See* 38 U.S.C. § 5107(a); *Robinette v. Brown,* 8 Vet. App. 69, 73 (1995). A claim is well grounded if it is "plausible." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Where the determi-

native issue involves medical etiology or a medical diagnosis, competent medical evidence that a claim is "plausible" or "possible" is required for the claim to be well grounded. *See Epps v. Gober,* 126 F.3d 1464, 1468–69 (Fed.Cir.1997), *aff'g,* 9 Vet.App. 341 (1996) (adopting this Court's definition of a well-grounded claim as set forth in *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd,* 78 F.3d 604 (Fed.Cir.1996) (table), and *Grottveit, supra,* including the requirement that "[w]here the determinative issue involves medical causation, competent medical evidence to the effect that the claim is plausible is required"); *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995); *Grottveit, supra.* This burden may not be met merely by presenting lay testimony, because lay persons are not competent to offer medical opinions. *See Epps, supra; Grottveit, supra; Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). Service connection generally requires medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Epps, supra; Caluza, supra; see also Heuer* and *Grottveit,* both *supra.* Whether a claim is well grounded is a question of law that this Court determines de novo. *See Robinette,* 8 Vet.App. at 74.

As to a claim to reopen, the Secretary must reopen a previously and finally disallowed claim when "new and material" evidence is presented or secured with respect to that claim. *See* 38 U.S.C. §§ 5108, 7105(c). "New" evidence is evidence that is not "merely cumulative" of other evidence of record. *See Evans v. Brown,* 9 Vet.App. 273, 283 (1996); *Blackburn v. Brown,* 8 Vet.App. 97, 102 (1995); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). To be "material," evidence must be probative of the issue at hand (i.e., it must tend to prove the merits of the claim as to each essential element that was a specified basis for that last final disallowance of the claim), and, if it is probative, there must be a reasonable possibility that in the context of all the evidence, both new and old, the outcome of the case would be changed. *See*

*Evans,* 9 Vet.App. at 284; *see also Justus v. Principi,* 3 Vet.App. 510, 513 (1992) (in determining whether evidence is new and material, "credibility" of newly presented evidence is to be presumed). Whether evidence is "new and material" is a question of law that this Court determines de novo under 38 U.S.C. § 7261(a)(1). *See Struck v. Brown,* 9 Vet.App. 145, 151 (1996); *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 213 (1991).

Assuming that the appellant's claim is an initial submission, the only medical evidence of record etiologically linking his present hip condition to service is his own testimony. The appellant, however, is not competent as a lay person to provide a medical opinion relating his present arthritis to his fall in service. *See Epps, supra; Slater v. Brown,* 9 Vet.App. 240, 243 (1996) (medical evidence is needed to provide causal nexus between veteran's in-service injury and arthritis of cervical spine). Because the record contains no competent medical evidence establishing such a relationship, the claim is not well grounded. *See Epps, supra; Caluza,* 7 Vet. App. at 504; *Grottveit, supra.*

Assuming that the appellant's claim is one to reopen his previously denied claim for a hip injury, his testimony indicating that he injured his hip as a consequence of an in-service fall is new and probative as to the basis for the 1981 RO denial, which was that the appellant had not injured his hip in service. Nevertheless, considering this new evidence with the old evidence of record, in the absence of any medical evidence etiologically linking the appellant's present condition to service there is no reasonable possibility of outcome change, and, thus, new and material evidence has not been presented. *See Evans,* 9 Vet.App. at 283 (1996); *Moray,* 5 Vet.App. at 213–14 (new and material evidence, to have reasonable possibility of outcome change, must contain medical evidence of causation where lay evidence will not suffice); *Slater, supra* (medical evidence is required to provide causal nexus between veteran's in-service injury and his arthritis).

### C. Claim 2—Without Regard to 38 C.F.R. § 3.303(b)

In part II.B., *supra,* the Court set forth the requirements for a well-grounded claim.

Although the record on appeal clearly shows that during service the appellant fell down steps on a ship and was thereafter treated for back pain on a number of occasions, there is no medical evidence of record showing any etiological relationship between his arthritis of multiple joints, other than the right hip, and service. Thus, the appellant's claim is not well grounded. *See Caluza* and *Grottveit,* both *supra.*

### D. Claims 1 and 2—Impact of 38 C.F.R. § 3.303(b)

In view of the Court's analysis in parts II.B. and C., *supra,* the question now becomes whether, based on the application of § 3.303(b), there is evidence of record, alternatively, to well ground or reopen claim 1 or to well ground claim 2.

Section 3.303(b) provides:

*Chronicity and continuity.* With chronic disease shown as such in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. This rule does not mean that any manifestation of joint pain, any abnormality of heart action or heart sounds, any urinary findings of casts, or any cough, in service will permit service connection of arthritis, disease of the heart, nephritis, or pulmonary disease, first shown as a clearcut clinical entity, at some later date. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not

adequately supported, then a showing of continuity after discharge is required to support the claim.

38 C.F.R. § 3.303(b) (1996).

### 1. Chronicity

 Section 3.303(b) provides that a veteran may utilize the "chronic disease shown as such in service" provision when the evidence demonstrates: (1) that the veteran had a chronic disease in service, or during an applicable presumption period [hereinafter element 1]; and (2) that the veteran presently has the same condition [hereinafter element 2].

With respect to element 1, two questions are posed: (a) is medical evidence needed to demonstrate the existence in service or in the presumption period of such a chronic disease, or will lay evidence suffice; and (b) must such evidence be contemporaneous with the time period to which it refers, or can post-service or post-presumption-period evidence address existence in service?

With respect to question (a), the answer depends on whether the disability is of a type that requires medical expertise to demonstrate its existence (*see Epps, supra; Caluza,* 7 Vet.App. at 506; *Heuer,* 7 Vet.App. at 384; *Grottveit, supra* ) or whether the disability is of the type as to which lay observation is competent to identify its existence (*see Falzone,* 8 Vet.App. at 403 (citing *Harvey v. Brown,* 6 Vet.App. 390, 393 (1994) for the proposition that medical causation evidence may not be necessary for conditions that lend themselves to lay observation such as flat feet); *Layno v. Brown,* 6 Vet.App. 465, 470 (1994); *Horowitz v. Brown,* 5 Vet.App. 217, 221–22 (1993); *Budnik v. Derwinski,* 3 Vet.App. 185, 186–87 (1992)).

With respect to question (b), either evidence contemporaneous with service or the presumption period or evidence that is post service or post presumption period may suffice. In so holding, the Court notes the following. First, the language of the regulation ("first shown as a clear-cut clinical entity, at some *later* date" (emphasis added)) appears to contemplate the use of post-service or post-presumption-period evidence of in-service or presumption-period disease. Second, to the extent that the language of the regulation is ambiguous, "interpretive

doubt is to be construed in the veteran's favor." *Brown v. Gardner,* 513 U.S. 115, 117–18, 115 S.Ct. 552, 554–55, 130 L.Ed.2d 462 (1994) (citing *King v. St. Vincent's Hosp.,* 502 U.S. 215, 220–21 n. 9, 112 S.Ct. 570, 574 n. 9, 116 L.Ed.2d 578 (1991)). Third, limitations on the dating of evidence have been found only where there has been clear regulatory guidance to that effect. *See Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992) (en banc) (interpreting 38 C.F.R. § 3.105(a) and holding that a "determination that there was a clear and unmistakable error must be based on the record and the law that existed at the time of the prior [adjudication in question]").

With respect to element 2, again the question becomes whether medical evidence is needed to demonstrate that a veteran presently has the same condition he or she had in service or during a presumption period or whether lay evidence will suffice. Again, the answer depends on the nature of the veteran's present condition, i.e., whether it is of a type that requires medical expertise to identify it as the same condition as that in service or during a presumption period, or whether it can be so identified by lay observation. *See Epps, Caluza, Heuer, Grottveit, Falzone,* and *Harvey,* all *supra.*

 The Court proceeds now to apply the preceding analysis to claims 1 and 2. Although the appellant was treated for a back condition in service, there is no medical evidence that demonstrates that either the appellant's back condition or hip condition were chronic in service or during the one-year presumption period for arthritis. 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (1996). Medical evidence is needed to provide a causal nexus between the veteran's in-service injury and his arthritis. *See Slater, supra.* Because the record contains no such evidence, element 1 cannot be satisfied. Because element 1 cannot be satisfied, element 2, by definition, cannot be satisfied either.

### 2. Continuity of Symptomatology

 If the evidence fails to demonstrate the applicability of the chronicity provision of § 3.303(b), a VA claimant may still obtain the benefit of § 3.303(b) (that is, providing a

substitute way of showing in-service incurrence and medical nexus for purposes of well grounding or reopening a claim, as set forth in part II.B., *supra)* if continuity of symptomatology is demonstrated. The questions raised by the regulation with respect to establishing continuity of symptomatology are: (a) how is the existence of continuity of symptomatology determined; (b) does a condition "noted during service" require a noting contemporaneous to service or through any special documentation; and (c) is any medical evidence of nexus needed in order to obtain the benefit of this provision?

With respect to question (a), whether there is continuity of symptomatology in connection with well-grounding a claim, *see Caluza,* 7 Vet.App. at 504; *Grottveit,* 5 Vet.App. at 93, or reopening a finally denied claim, *see Evans,* 9 Vet.App. at 283; *Moray,* 5 Vet.App. at 213–14, is a question that the Court determines de novo. *See* 38 U.S.C. § 7261(a)(1); *see also Robinette,* 8 Vet.App. at 76 (evidence presumed credible for purpose of determining whether claim is well grounded); *Justus,* 3 Vet.App. at 513 (evidence presumed credible for purpose of determining whether evidence is new and material). If the Court is reviewing a BVA decision on the merits, a determination by the BVA as to continuity of symptomatology would be one of fact that the Court would review under the clearly erroneous standard. *See* 38 U.S.C. § 7261(a)(4) (review by the Court is as to BVA "finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary"); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990) ("if there is a 'plausible' basis in the record for the factual determinations of the BVA ... [the Court] cannot overturn them").

Regardless of context, the Court notes that symptoms, not treatment, are the essence of any evidence of continuity of symptomatology. *See Wilson v. Derwinski,* 2 Vet.App 16, 19 (1991) ("regulation requires continuity of symptomatology, not continuity of treatment"). As to threshold determinations of well groundedness or the existence of new and material evidence, such evidence is generally presumed credible and is not subject to weighing. *See King (Roderick) v. Brown,* 5 Vet.App. 19, 21 (1993); *Justus, supra* (in determining whether evidence is new and material, "credibility" of newly presented evidence is to be presumed unless evidence is inherently incredible or beyond competence of witness). (However, the Court notes that in a merits context the lack of evidence of treatment may bear on the credibility of the evidence of continuity.)

With respect to question (b), the Secretary asserts that the noting requirements of § 3.304(b) ("[o]nly such conditions as are recorded in examination reports are to be considered as noted") are to be superimposed on § 3.303(b). The Court rejects the Secretary's assertion and holds that as long as the condition is noted at the time the veteran was in service such noting need not be reflected in any written documentation (other than as required to be in a format sufficient for inclusion as part of the record and proceedings before the Secretary and the Board (*see Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990))), either contemporaneous to service or otherwise. In so holding, the Court notes the following. First, nothing in the language of § 3.303(b) suggests that "being noted" is limited to recordation in examination reports. Second, the recordation-in-examination report requirement of § 3.304(b) is for the veteran's benefit rather than to his or her detriment, as would be the case if it were superimposed on § 3.303(b). Third, the Secretary's argument contains the seeds of its own defeat; the very fact that the Secretary has required in § 3.304(b) written documentation for the notation of a preexisting condition strongly suggests that reading such a documentation requirement into § 3.303(b), where the Secretary did not elect to include one specifically, would be unwarranted. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)) (internal quotation marks omitted); *Smith v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir. 1994) ("canons of construction of course apply equally to any legal text and not merely

to statutes"). Fourth, the principal definition of "noted" does not require a writing, WEBSTER'S NEW WORLD DICTIONARY 927 (3d College ed.1991) (defining "noted" as "1 to pay close attention to; heed; notice; observe[;] 2 to set down in writing; make a note of"). Fifth, to the extent that the language of the regulation is ambiguous, "interpretive doubt is to be construed in the veteran's favor." *Gardner*, 513 U.S. at 117–18, 115 S.Ct. at 555. Sixth, if service records have been lost through no fault of the veteran, it would be unfair to require that a writing be contained in a service record. Seventh, limitations on dating and type of evidence have been found in only the few instances where there has been clear regulatory guidance to that effect. *See Russell, supra* and *Tubianosa v. Derwinski*, 3 Vet.App. 181, 184 (1992) (interpreting 38 C.F.R. § 3.374(c) and holding that private physician's diagnosis of tuberculosis being manifest during the presumption period must be corroborated by "acceptable clinical, x-ray or laboratory studies"); *Espiritu*, 2 Vet.App. at 494–95 (expert evidence required where subject matter necessitates expert opinion). Of course, as to type of evidence, unless the condition is of a type as to which a lay person's observation is competent, medical evidence of noting will be required. *See Caluza, supra.*

With regard to question (c), if the continuity of symptomatology provision of § 3.303(b) requires that there be medical-nexus evidence relating the veteran's present disability to service (*see Grottveit* and *Moray, supra* (medical-nexus evidence of relationship between present disability and service is generally required for purposes of well grounding a claim and reopening a previously disallowed claim)), the continuity of symptomatology provision would simply be a nullity. Thus, the Court holds that no such medical-nexus evidence is required. Nevertheless, because it would not necessarily follow that there is a relationship between any present disability and the continuity of symptomatology demonstrated, medical evidence (*see Epps, Caluza, Heuer* and *Grottveit*, all *supra* ) is required to demonstrate such a relationship unless such a relationship is one as to which a lay person's observation is competent (*see Falzone, Layno, Horowitz*, and *Budnik*, all *supra* ).

The Court will now apply the preceding analysis to claims 1 and 2. As indicated in part I., *supra*, the appellant testified at his January 1991 hearing that while in service he fell down steel steps, landed on his hip and back, and was hospitalized for approximately ten days. R. at 307–08. He reported that he was limping at the time of discharge (R. at 309), that he had walked with a limp ever since (Suppl. R. at 1), and that he had received heat treatments and massages over the years, although not through the VA system (R. at 311). This testimony, for purposes of well-groundedness and reopening determinations, is presumed credible because it is not inherently incredible or beyond the competence of the appellant, as a lay person, to observe. *See Justus* and *King*, both *supra.* Thus, even if the record did not contain service medical records showing treatment in service for a back problem, continuity of symptomatology has been demonstrated because a noting during service requires that the evidence show only that a condition was observed during service, or during the presumption period, but does not require that such observation be recorded, either in special documentation or during the time of service or during the presumption period.

Furthermore, for the purposes of determining whether the hip claim is well grounded or, alternatively, whether new and material evidence has been presented to reopen the previously disallowed hip claim, and whether the back claim is well grounded, the appellant's statements outlined in the preceding paragraph are, in and of themselves, sufficient to show continuity of symptomatology. (Because of the Court's determination regarding these statements, it need not address whether the August and December 1985 VA progress notes indicating a long history of back and hip problems are sufficient to demonstrate continuity of symptomatology.)

Finally, notwithstanding the appellant's showing of post-service continuity of symptomatology and noting during service with respect to both the hip and back conditions, medical expertise is required to relate the appellant's present arthritis etiologically to

his post-service symptoms. *See Epps, supra; Slater,* 9 Vet.App. at 243. Because the record is devoid of any such evidence, the appellant has not submitted evidence sufficient to well ground or, alternatively, reopen his hip condition claim or to well ground his back condition claim, and, as a consequence, the duty to provide a medical examination and opinion was not triggered under 38 U.S.C. § 5107(a). *See Epps,* 126 F.3d at 1468–69; *Caluza,* 7 Vet.App. at 504; *Grottveit,* 5 Vet. App at 93. Hence, with respect to all issues considered in parts II.B.–D., *supra,* the Court will affirm as to the BVA's disallowance of the hip condition and back condition claims. *See Sutton v. Brown,* 9 Vet.App. 553, 563 (1996) (Court affirmed BVA denial of claim on merits where Court concluded that appellant not entitled to merits adjudication because no new and material evidence to reopen); *Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc) (holding that Board's incorrectly reaching merits where claim was not well grounded was nonprejudicial error).

In sum, then, the rule here established is as follows: The chronicity provision of § 3.303(b) is applicable where evidence, regardless of its date, shows that a veteran had a chronic condition in service or during an applicable presumption period and still has such condition. Such evidence must be medical unless it relates to a condition as to which, under the Court's case law, lay observation is competent. If the chronicity provision is not applicable, a claim may still be well grounded or reopened on the basis of § 3.303(b) if the condition is observed during service or any applicable presumption period, continuity of symptomatology is demonstrated thereafter, and competent evidence relates the present condition to that symptomatology.

### E. Issue of MANUAL M21–1

The Court declines to review any issue raised by the appellant and by the American Legion, as amicus curiae, regarding the Manual M21–1. *See* U.S. VET.APP. R. 35(e) ("A motion for reconsideration or review must state the points of law or fact which the party believes the Court has overlooked or misunderstood, and must contain an argument in support of the party's position."). The appellant, in his motion for panel review, made no reference to paragraph 1.03(a) of

part III of MANUAL M21–1, which was in effect at the time that his motion was filed, *see* Appellant's Motion for Panel Review of Memorandum Decision, and the two briefing orders, applicable to the parties as well as amici curiae, issued by the panel, on July 9, 1996, and November 20, 1996, specifically raised questions only pertaining to § 3.303(b), *see ante* at 491–493. *Compare Tubianosa,* 3 Vet.App. at 184 ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."), *with Gilbert,* 1 Vet.App. at 53 (Nebeker, C.J., concurring) ("That we considered the arguments belatedly raised by the Secretary in *Fugere [v. Derwinski,* 1 Vet.App. 103 (1990)] is best characterized as the exception rather than the rule.").

### III. CONCLUSION

The March 16, 1994, decision of the BVA is AFFIRMED.