Citation Nr: 1237392 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 08-19 847A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to service connection for a cervical spine strain. 

2. Entitlement to service connection for lumbar spine radiculopathy. 

3. Entitlement to service connection for a head injury disability (claimed as skull fracture and a concussion). 


REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel


INTRODUCTION

The Veteran served on active duty from November 1977 to January 1981 and from March 1988 to April 1990. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois that denied entitlement to service connection for a cervical spine strain disability, lumbar spine radiculopathy and a head injury (claimed as a skull fracture and concussion). 

The Veteran presented testimony at a videoconference hearing chaired by the undersigned Veterans Law Judge in November 2011. A transcript of the hearing is associated with the Veteran's claims folders. 

In a January 2012 decision, the Board remanded these issues for additional development.

The Board notes that, in addition to the paper claims file, there is a Virtual VA electronic claims file associated with the Veteran's claim. A review of the documents in the electronic file reveals additional evidence that will be considered by the Board in this appeal.






FINDINGS OF FACT

1. The competent evidence shows that the Veteran's cervical spine disability, which manifested first several years after his service separation, is not related to active service.

2. The competent evidence shows that the Veteran's lumbar spine radiculopathy disability, which manifested first several years after his service separation, is not related to active service.

3. The Veteran's current head injury disability has not been shown by competent evidence to be related to active service.


CONCLUSIONS OF LAW

1. A cervical spine disability was not incurred in active service. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, 3.304 (2011).

2. A lumbar radiculopathy disability was not incurred or aggravated during service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2011).

3. The criteria for service connection for a head injury disability (claimed as skull fracture and a concussion), have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.159, 3.303 (2011).







REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See also 73 Fed. Reg. 23,353-23,356 (April 30, 2008) (concerning revisions to 38 C.F.R. § 3.159). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Notice should be sent prior to the appealed rating decision or, if sent after the rating decision, before a readjudication of the appeal. A Supplemental Statement of the Case, when issued following a notice letter, satisfies the due process and notification requirements for an adjudicative decision for these purposes. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

In this appeal, the RO provided notice to the Veteran in a January 2007 letter, prior to the date of the issuance of the appealed April 2007 rating decision. The January 2007 letter explained what information and evidence was needed to substantiate a claim for service connection, as well as what information and evidence must be submitted by the Veteran, and what information and evidence would be obtained by VA. The letter also provided the Veteran with information pertaining to the assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matter on appeal. Pertinent medical evidence associated with the claims file consists of service treatment records, VA treatment records, private treatment records and the report of the Veteran's January 2008 VA examination. Also of record and considered in connection with the appeal are the various written statements provided by the Veteran and his representative on his behalf as well as his November 2011 hearing testimony. 

The Board notes that per the January 2012 remand instructions, the Veteran was scheduled for a VA examination to address the etiology of his claimed head injury disability in February 2012. However, the Veteran did not report for his examination. Where entitlement to a benefit cannot be established or confirmed without a current VA examination or reexamination and a claimant, without good cause, fails to report for such examination, or reexamination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. 38 C.F.R. § 3.655(b). Accordingly, in light of the Veteran's failure to report to his February 2012 examination, further examination is not warranted in this instance. 

As such, the Board finds that the AMC substantially complied with the January 2012 remand directives, and that no further action in this regard is warranted. See Dyment v. West¸ 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with).

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. 

Service Connection Law and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); see also Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage v. Gober, 10 Vet. App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post- service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; see Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b).

In relevant part, 38 U.S.C.A. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim to disability or death benefits. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir.2007). In fact, competent medical evidence is not necessarily required when the determinative issue involves either medical etiology or a medical diagnosis. Id. at 1376-77; see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage, 10 Vet. App. at 496 (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). 

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 

Factual Background

The Veteran's service treatment records demonstrate that the Veteran's October 1977 enlistment examination was negative for complaints or treatments of a cervical spine disability, a lumbar spine disability or residuals of a head injury. A February 1978 report of medical examination for the Veteran's airborne training was negative. 

The Veteran presented with complaints of low back pain in March 1978. He reported a two week history of pain.

In September 1978, the Veteran sustained a parachute jump injury for which he was hospitalized for 5 days. When parachuting, the Veteran was dragged through the woods by a brisk wind with his chute unharnessed. He was unconscious for an undetermined amount of time after hitting his head. An attending physician noted that the Veteran initially had complaints of numbness in a spot on the right iliac crest. The numbness totally subsided since his admission to the hospital. The sensory examination was remarkable in that there was a sensory loss to pinprick involving the C3, 4 and 5 dermatomes. The admitting diagnosis was cerebral concussion, traumatic myofasciitis with possible cervical spine ligamentous injury (loss of normal lordotic curve at the C3-4 level), rule out cord contusion and traumatic myofasciitis, thoracic and lumbar spine.

Later diagnoses from the Veteran's stay at the hospital were a probable mild cervical cord contusion, a cerebral hemorrhage, a lumbar strain and a cervical strain. The discharge diagnosis was a cervical strain. An x-ray of the Veteran's cervical spine revealed a reversal of the cervical lordosis in the upper cervical area but no evidence of fracture was identified.

An October 1978 treatment report evaluated the Veteran after his September 1978 parachuting injury which resulted in a cervical strain. The treating physician noted that the examination was normal. The Veteran had complaints of headaches but they were resolving. The Veteran also had full range of motion of his cervical spine. 

In November 1979, the Veteran presented with a complaint of a lump on the back side of his neck.

An undated service treatment note reported that the Veteran presented with complaints of loss of vision in his right eye and blurred vision in his left eye. The physician also noted that the Veteran had experienced a concussion 2 1/2 months ago. The diagnosis was bilateral conjunctivitis.

A June 2005 MRI of the cervical spine demonstrated moderate bulges at C3-4, C4-5, C5-6 and C6-7.

The Veteran underwent a lumbar reexploration with extension of right L5-S1 interlaminar laminotomy in July 2005. 

A September 2005 private treatment note reported that the Veteran presented with low back pain radiating into his right leg. He was status two lumbar spine surgeries. The treatment reported noted that the Veteran first injured his back a year ago after lifting a garage door. The next day after this incident, he had surgery at L5-S1. He was okay until about 4 months later when he had a recurrence of of low back pain and weakness which resulted in him falling down. The diagnosis was recurrent lumbar radicular pain. 

An October 2005 private treatment report noted that the Veteran was referred to their office from an emergency room with complaints of pain that was radiating from his low back into his right leg. 

A March 2006 private consultation diagnosed the Veteran with lumbar radiculopathy.

A May 2006 private treatment note indicated that the Veteran had a history of multiple previous lumbosacral spine surgeries. The diagnosis was electrodiagnostic evidence of moderate right sided L5, S1 and S2 root-level involvement with associated active denervation. Clinical correlation was suggested.

In June 2006, the Veteran had been hospitalized after sustaining a 10 foot fall while out fishing.

In a December 2006 letter, a private physician noted that the Veteran had been under his care for a complex lumbosacral spine problem which had necessitated multiple surgical interventions. The physician had informed the Veteran that he felt that it was more likely than not that the Veteran's experience as a paratrooper during service contributed significantly to the progression of his spinal degenerative disease.

The Veteran underwent a VA examination for his spine in January 2008. The Veteran reported his accident as a paratrooper while in service which he noted, left him hospitalized for one month. He also detailed post-service motor vehicle accidents. Specifically, in 1998 he was rear ended which resulted in hospitalization and surgery on his bilateral shoulders, knee and ulnar nerve as a result of whiplash injuries. He had a second accident in 2007 where he was reportedly run off the road by a drunk driver who left the scene of the accident. He indicated that he was in a coma for one week after this accident and also "broke his back" which resulted in 3 vertebrae (L3, L4 and L5) being removed. The diagnosis was mild to moderate disc bulges at C3-C7; L5-S1 disc herniation, status post lumbar disc surgery; and right lumbar radiculopathy. The examiner noted that after extensive review of the Veteran's service treatment records and all records, to include those submitted by the Veteran's treating physicians, it had been determined that the Veteran had a past medical history of 2 motor vehicle accidents requiring hospitalization and medical and surgical treatments. The examiner noted that the date of the motor vehicle accidents were in 1998 and 2007 while the the Veteran was separated from military service in 1981. From 1981 to 1998, the medical records are silent, indicating no medical issues to warrant medical treatment. Most of the Veteran's documentation is dated during the proximity of time of his motor vehicle accidents and a few other personal injuries discovered with the Veteran's medical records. Based upon this evidence, the examiner concluded that the Veteran's current complex lumbosacral spine problem, recurrent lumbar radicular pain, moderate cervical spine disc bulges and chronic upper extremity hand numbness was less likely than not related to his military service and more likely than not related to the multiple post-service traumas including 2 motor vehicle accidents, lifting a garage door and status post a ten foot fall. 

In a November 2011 letter, a private physician noted that the records that the Veteran submitted to her demonstrated that since his military injury, he has had multiple lumbar surgeries with instrumentation. He continued to suffer greatly from neck and low back pain as well as memory impairment. The Veteran reported that he did not have these symptoms before being injured in the military. He indicated that years later, he also had a car accident. The physician opined that given that the injury in the military predated the car accident by many years and also give the lack of symptoms before his injury which occurred in the military at the age of 17, she thought "it was probable" that his present symptoms of cervical spine and lumbar spine disabilities were likely related to his military accident. She also suspected that his cognitive impairment "might also be related to a concussion", which "may have" also occurred at the time of the accident when he was a paratrooper at the age of 17. He had been on many different medications to control his pain which would influence his memory.

At his November 2011 hearing, the Veteran testified that he was injured in service while paratrooping when his backpack did not release. He also stated that he had post-service auto accidents which he felt would not have resulted in such significant injuries had the previous weakness from his in-service injuries not existed. 


I. Entitlement to service connection for a cervical spine strain and lumbar spine radiculopathy.

As the Veteran's claims for service connection for a cervical spine strain and lumbar radiculopathy have similar backgrounds and analysis, they will be addressed together.

Analysis

As noted above, the Veteran contends that his cervical spine and lumbar spine disabilities are a result of his documented in-service injury that he sustained while paratrooping.

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds however, that service connection for cervical strain and lumbar spine radiculopathy disabilities is not warranted.

There are current diagnoses of mild to moderate disc bulges at C3-C7; L5-S1 disc herniation, status post lumbar disc surgery; and right lumbar radiculopathy; hence, the first element of service connection is satisfied. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his military service and the disability. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); D'Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 Vet. App. 546, 548 (2000).

The Board notes that the Veteran's service treatment records demonstrate complaints of back pain after his paratrooping accident which resulted in diagnoses of probable mild cervical cord contusion, a cerebral hemorrhage, a lumbar strain and a cervical strain.

The service treatment records however, were negative for any or diagnoses of any chronic cervical or lumbar back disorders as the back complaints were medically addressed in service, and appear to have been of an acute and transitory nature. Significantly, an October 1978 treatment report evaluating the Veteran after his September 1978 parachuting injury noted that the examination was normal as the Veteran had full range of motion of his cervical spine. 

While the Veteran had an in-service lumbar and cervical spine injury due to a paratrooping accident, there are no clinical findings or diagnoses of cervical spine or lumbar radiculopathy disabilities until many years after service. The first post-service evidence of a cervical spine disability was in June 2005 while the first evidence of a lumbar spine disability was in July 2005. Additionally, private and VA treatment notes report that injuries to his back were sustained in 1998 and 2007 motor vehicle accidents as well as an accident when he was lifting his garage door in approximately 2004.

As the Veteran was not diagnosed with a cervical or lumbar disorder until many years after service and there was a significant period between his service and his post-service injuries where the medical record was silent for complaints of a back disability, the Board finds that this is strong evidence against a finding of any continuity of symptomatology and against his claim for service connection. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000). 

There are conflicting opinions as to whether the Veteran's cervical spine and lumbar spine radiculopathy disabilities are related to his active service. As noted above, in a December 2006 letter, a private physician found it was more likely than not that the Veteran's experience as a paratrooper during service contributed significantly to the progression of his spinal degenerative disease. Additionally, in a November 2011 letter, a private physician found that "it was probable" that his present symptoms of cervical spine and lumbar spine disabilities were likely related to his military accident. Conversely, the January 2008 VA examiner specifically found that the Veteran's current complex lumbosacral spine problem, recurrent lumbar radicular pain, moderate cervical spine disc bulges and chronic upper extremity hand numbness were less likely than not related to his military service and more likely than not related to the multiple post-service traumas including 2 motor vehicle accidents, lifting a garage door and status post a ten foot fall.

The Board may favor the opinion of one competent medical professional over that of another so long as an adequate statement of reasons and bases is provided. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). An evaluation of the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the examiner's knowledge and skill in analyzing the data, and the medical conclusion reached. The credibility and weight to be attached to such opinions are within the province of the Board as adjudicators. Guerrieri v. Brown, 4 Vet. App. 467 (1993).

Greater weight may be placed on one physician's opinion over another depending on factors such as reasoning employed by the physicians and whether or not and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994). The probative value of a medical opinion is generally based on the scope of the examination or review, as well as the relative merits of the expert's qualifications and analytical findings, and the probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993). 

In this instance, the Board finds that the January 2008 VA examiner's opinion to be the most probative. Regarding the November 2011 private physician's opinion that "it was probable" that Veteran's present symptoms of cervical spine and lumbar spine disabilities were likely related to his military accident, the Board notes that the fact that this opinion is relatively speculative in nature limits its probative value. An examiner's opinion that a current disorder "could be" related to, or that there "may be" some relationship with, symptomatology in service makes the opinion of the examiner too speculative in nature. See Bostain v. West, 11 Vet. App. 124, 127-28, quoting Obert v. Brown, 5 Vet. App. 30, 33 (1993) (a medical opinion expressed in terms of "may" also implies "may or may not" and is too speculative to establish a causal relationship). See also Warren v. Brown, 6 Vet. App. 4, 6 (1993) (a doctor's statement framed in terms such as "could have been" is not probative). 

Regarding the December 2006 letter from a private physician, while the letter related the Veteran's back disability to service, no rationale was provided for this opinion and they did not provide any specific evidentiary or medical basis for the opinion. The Board notes that, in assessing evidence such as medical opinions, the failure of the physician to provide a basis for his opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998).

In contrast, the January 2008 VA examiner provided an unequivocal and detailed medical opinion supported by a pertinent rationale based upon a review of the Veteran's claims file and an examination of the Veteran, when concluding that the Veteran's claimed cervical spine and lumbar spine radiculopathy disabilities were not related to the Veteran's service. Significantly, the examiner also noted that the more likely cause of the Veteran's current lumbar and cervical spine disabilities was was the multiple post-service traumas including 2 motor vehicle accidents, lifting a garage door and status post a ten foot fall. Notably, the December 2006 private physician did not mention or take into account the Veteran's multiple post-service traumas. Also unlike the other physicians, the January 2008 VA examiner also addressed the lapse in time from the Veteran's 1978 in-service injury to then next receiving treatment in 1998 for his back disability. The examiner noted that from 1981 to 1998, the medical records were silent, indicating no medical issues to warrant medical treatment while most of the Veteran's documentation was dated during the proximity of time of his motor vehicle accidents and a few other personal injuries.

For these reasons the Board finds the January 2008 VA examiner's assessment to be the most probative. 

Given that the most probative opinion is against a finding of a relationship between a cervical spine and lumbar spine radiculopathy disability and service, the Board finds that service connection is not warranted.



II. Entitlement to service connection for a head injury disability (claimed as skull fracture and a concussion).

Analysis

The Veteran contends that he has a current head disability as a result of his service, to include as residuals injuries from his falls while parachuting in service. 

Under the circumstances of this case, the Board concludes that service connection for a head injury disability is not warranted.

Initially, there is some question as to the presence of a current a head injury disability. Multiple private and VA records are silent as to residuals of the Veteran's in-service head injury or any current head injury disability. In a November 2011 private treatment letter however, a private physician noted that the Veteran had demonstrated some cognitive impairment. When affording the Veteran the benefit of the doubt, the Board finds that there is a current diagnosis of a head injury disability and the first element of service connection is satisfied. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his military service and the disability. Boyer, supra; D'Amico, supra; Hibbard, supra. 

The Board notes that the Veteran's service treatment records demonstrate that the Veteran was diagnosed with a cerebral concussion which resulted from his parachuting injury. 

The service treatment records however, were negative for any or diagnoses of any chronic head injury disorders as the head complaints were medically addressed in service, and appear to have been of an acute and transitory nature. Significantly, an October 1978 treatment report evaluating the Veteran after his September 1978 parachuting injury noted that the examination was normal and that the Veteran had reported that his headaches were resolving. 

The Veteran was also not diagnosed with a head injury disability until many years after service and there was a significant period between his service and his post-service injuries where the medical record was silent for complaints of a head injury disability. This is strong evidence against a finding of any continuity of symptomatology and against his claim for service connection. See Maxson, supra. 

The November 2011 private physician suspected that the Veteran's current cognitive impairment "might also be related to a concussion", which "may have" also occurred at the time of the accident when he was a paratrooper at the age of 17. The physician also noted that the Veteran had been on many different medications to control his pain which would influence his memory.

While the private physician appears to be relating the Veteran's current cognitive impairment to his in-service closed head injury, the Board notes that the fact that this opinion is relatively speculative in nature limits its probative value. An examiner's opinion that a current disorder "could be" related to, or that there "may be" some relationship with, symptomatology in service makes the opinion of the examiner too speculative in nature. See Bostain, supra; quoting Obert, supra (a medical opinion expressed in terms of "may" also implies "may or may not" and is too speculative to establish a causal relationship). See also Warren, supra (a doctor's statement framed in terms such as "could have been" is not probative).

As noted above, the Veteran was scheduled for a VA examination in February 2012 to assess the etiology of any current head injury disability. However, the Veteran did not report for his February 2012 examination. In this regard, the Court has held, "The duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet.App. 190, 193 (1991). As such, the Veteran's claim is assessed based on the evidence of record. 38 C.F.R. § 3.655(b). 

The Board finds that while the competent evidence of record shows a currently diagnosed cognitive impairment disability, it does not demonstrate demonstrate continuity of symptomatology since service, and does not demonstrate that this disability is at least as likely as not related to service. For the reasons and bases expressed above the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a head injury disability. The benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b). 


III. All Disabilities

The Board has accordingly considered the lay evidence offered by the Veteran to VA in which he asserted his belief that his cervical strain, lumbar radiculopathy and residuals of head injury disabilities are related to service. 

A layperson is competent to testify in regard to the onset and continuity of symptomatology. Heuer v. Brown, 7 Vet. App. 379, 384 (1995); Falzone v. Brown, 8 Vet. App. 398, 403 (1995); Caldwell v. Derwinski, 1 Vet. App. 466 (1991). However, lay persons are not competent to opine as to medical etiology or render medical opinions. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Grover v. West, 12 Vet. App. 109, 112 (1999); see also Espiritu v. Derwinski, supra.

To the extent that the Veteran's assertions are offered to establish a relationship between current claimed disabilities and service, such evidence must fail. The matter of medical etiology, or relationship-the matter on which these claims turn-is within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As the Veteran is not shown to be other than a layperson without the appropriate medical training and expertise, he is not competent to render a probative (i.e., persuasive) opinion on a medical matter. See, e.g., Bostain v. West, 11 Vet. App. 124, 127 (1998), citing Espiritu v. Derwinski, supra. See also Routen v. Brown, 10 Vet. App. 183, 186 (1997) ("a layperson is generally not capable of opining on matters requiring medical knowledge"). Moreover, to the extent that the holding in Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) can be interpreted to enable a lay person to speak as to etiology in some limited circumstances in which nexus is obvious merely through lay observation, such as a fall leading to a broken leg, the question of causation here involves a more complex relationship that the Veteran is not competent to address.

Hence, the lay assertions in this regard have no probative value.


ORDER

Entitlement to service connection for a cervical spine strain is denied. 

Entitlement to service connection for lumbar spine radiculopathy is denied. 

Entitlement to service connection for a head injury disability (claimed as skull fracture and a concussion) is denied. 


____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs