Citation Nr: 1334641 
Decision Date: 10/30/13 Archive Date: 11/06/13

DOCKET NO. 07-31 793 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss. 

2. Entitlement to service connection for a right hip disability. 

3. Entitlement to service connection for a low back disability, to include as secondary to a right hip disability. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

H. Hoeft, Counsel


INTRODUCTION

The Veteran had active duty service from July 1980 to July 1984, and served in the United States Army Reserves from July 1984 to November 1987. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision of the Buffalo, New York, Regional Office (RO) of the Department of Veterans Affairs (VA), which denied service connection for tinnitus, bilateral hearing loss, a right hip disability, and a low back disability. 

The Board granted service connection for tinnitus in August 2011 and remanded the remaining claims for further development. 

The issues of entitlement to service connection for a right hip disability and a low back disability as secondary to a right hip disability are addressed in the REMAND portion of the decision below and are once again REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

The Veteran currently suffers from bilateral hearing loss disability and there is a reasonable basis to attribute such disability to his period of military service.


CONCLUSION OF LAW

Resolving all doubt in the Veteran's favor, current bilateral hearing loss is related to service. 38 U.S.C.A. §§ 1131, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.385 (2013).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify the appellant of information and evidence necessary to substantiate the claim and redefined its duty to assist him in obtaining such evidence. 38 U.S.C.A. §§ 5102, 5103, 5103A, and 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.156, 3.159, 3.326 (2013). With respect to the Veteran's service connection claim for bilateral hearing loss, given the favorable disposition of the action here, which is not prejudicial to him, the Board need not assess VA's compliance with the VCAA. See, e.g., Bernard v. Brown, 4 Vet. App. 384 (1993); VAOPGCPREC 16-92, 57 Fed. Reg. 49,747 (1992).

Service Connection for Bilateral Hearing Loss

The Veteran contends that he incurred bilateral hearing loss during active service. He specifically contends that he was exposed to significant in-service acoustic trauma while serving as an air defense missile mechanic/Improved Hawk firing section mechanic during active service which caused or contributed to his current bilateral hearing loss. He additionally contends that he was exposed to acoustic trauma and suffered from ear infections during his reserve service. 

Law & Regulations

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Certain chronic diseases, including sensorineural hearing loss (as an organic disease of the nervous system), are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). 

Establishing service connection generally requires (1) medical evidence of a presently existing disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claim in-service disease or injury and the present disability. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)); Hickson v. West, 12 Vet. App. 247, 253 (1999).

Clinically, the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For compensation purposes, however, impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater or where the auditory thresholds for at least three of these frequencies are 26 dB or greater or when speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385. 

If there is no evidence of a chronic condition during service or an applicable presumptive period, then a showing of continuity of symptomatology after service may serve as an alternative method of establishing the second and/or third element of a service connection claim. See 38 C.F.R. § 3.303(b); Savage v. Gober, 10 Vet. App. 488 (1997). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Evidence of a chronic condition must be medical, unless it relates to a condition to which lay observation is competent. If service connection is established by continuity of symptomatology, there must be medical evidence that relates a current condition to that symptomatology. See Savage, 10 Vet. App. at 495-498. 

In Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), the Federal Circuit recently overruled Savage and limited the applicability of the theory of continuity of symptomatology in service connection claims to those disabilities explicitly recognized as "chronic" in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); see also 38 C.F.R. § 3.309(a). Because sensorineural hearing loss (as an organic disease of the nervous system) is considered a "chronic" disability under 38 C.F.R. § 3.309(a), the theory of continuity of symptomatology remains valid in adjudicating the Veteran's claim.

It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. Reasonable doubt is one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. See 38 C.F.R. § 3.102. 

Factual Background

The Veteran's service treatment records from his July 1980 to July 1984 period of active duty service, are silent as to complaints, treatment, or diagnoses of hearing loss or other problems relating to the ears. There is no separation examination and/or medical history report of record. 

A January 1985 quad examination conducted during the Veteran's Army Reserve service revealed a normal clinical evaluation of the ears; however, no contemporaneous audiometer findings were provided in the examination report. 

A June 1986 Screening Note of Acute Medical Care report reflects that the Veteran was treated at the Troop Medical Clinic for complaints of dizziness and lightheadedness. The Veteran additionally complained of decreased hearing in his left ear for the last 2 weeks. The pertinent diagnosis was otitis media. 

A January 1987 quad examination conducted during the Veteran's Army Reserve service likewise revealed a normal clinical evaluation of the ears, including audiometer findings within normal limits. 

Following the Veteran's 1987 discharge from the Army Reserves, the record reflects complaints of decreased hearing (right ear) beginning in February 1993. See Private Treatment Records, Dr. King, Ear, Nose, and Throat. 

VA treatment records reflect complaints of ear problems beginning in 1999. Specifically, VA outpatient clinical records show treatment for left tympanic membrane scarring and a partially occluded right ear canal. 

An October 2000 private treatment report from Dr. Radi notes "some noise exposure in the military and with chain saws, but states he did use HP (hearing protection)." Diagnoses including hearing loss, bilateral tinnitus, cerumen, and tympanic membrane of the left ear with significant scarring and dimeric region. October 2000 Private Treatment Note from Dr. Radi. 

A January 2001 private treatment note from Dr. King reflects a diagnosis of hearing loss; annual audiometric testing was recommended at that time. 

A May 2001 treatment record from Dr. King shows "some hearing loss" with prior audiological review and a diagnosis of hearing loss. 

A May 2002 treatment record from Dr. King reflects complaints of decreased hearing. 

A September 2002 treatment note from Dr. King confirms audiometric findings of "slight asymmetric HL consistent with his military noise exposure and shooting right-handed." The diagnostic impression was mild to moderate high frequency sensorineural hearing loss, left ear, and right normal hearing to 4000 Hz, then a mild high frequency sensorineural hearing loss, right ear. 

A February 2003 treatment note from Dr. King reflects that the Veteran purchased a left ear hearing aid and that it was working very well for him. The diagnostic impression, inter alia, was impaired hearing. 

A September 2003 treatment note from Dr. King shows a "history of noise exposure," and diagnoses of long-standing tinnitus, hearing loss, eustachian tube dysfunction (left ear), and seasonal allergies. 

The Veteran submitted a claim for bilateral hearing loss in January 2006. In a February 2006 statement, he reported that he had no post-service occupational noise exposure and that he did not hunt or own firearms. 

The Veteran underwent a VA audiological examination in August 2007. The examination report noted that the Veteran was an improved hawk firing section mechanic and combat engineer during service. The Veteran reported that he served on active duty from 1980 to 1984 and that he had bilateral hearing loss with a constant bilateral tinnitus. He denied post-service recreational and occupational noise exposure. Military noise exposure included working as a mechanic on radar equipment and being around noisy, large generators and equipment. He did report that he wore hearing protection. He also stated that he was exposed to noise from the firing range. 

Objectively, audiometric testing revealed pure tone thresholds of 15, 15, 15, 35, and 25 decibels at 500, 1000, 2000, 3000, and 4000 Hertz , respectively, in the left ear, and of 15, 15, 15, 0 and 5 decibels at 500, 1000, 2000, 3000, and 4000 Hertz, respectively, in the right ear. CNC speech recognition scores were 94% in the left ear and 98% in the right ear. The examiner stated that hearing in the right ear was considered to be within normal limits at all frequencies tested. The left ear was also within normal limits from 250 Hz through 2000 Hz, with a mild/normal sloping to moderate conductive hearing loss from 3000 Hz through 8000 Hz. 

The VA examiner opined that the Veteran's hearing was within normal limits at the January 1987 quad examination (three years after active duty service), and thus, it was "not as least as likely as not that the Veteran's present left ear hearing loss is related to service noise exposure and/or ear infection." The examiner further opined that it was "not as least as likely as not that service noise exposure and/or ear infection caused a right ear hearing loss as hearing is considered to be within normal range in that ear at this time." The examiner lastly noted that "today's hearing thresholds 23 years after discharge do not meet the criteria of disabling hearing impairment for adjudication purposes for either ear." 

In 2011, the Veteran submitted private audiological examinations and treatment records, dating from 1993 to 2009, from his longtime treating Ear, Nose, and Throat (ENT) physician, Dr. King. Some of the records are duplicative of those already delineated above. A February 2007 treatment note reflects multiple ENT complaints and progressive hearing loss. Dr. King expressly noted that the Veteran had "extensive noise exposure in the military, including shooting." The diagnostic impression was progressive, asymmetric hearing loss with noise exposure history. 

An October 2007 treatment note shows that the Veteran's "hearing loss appears stable with some asymmetry and did serve in the military and had a negative brain MRI for acoustic." 

Notably, in March 2007 (i.e., during the appeal period), the Veteran underwent a private audiological examination. See March 2007 Audiological Evaluation, Dr. King. At that time, audiometric testing revealed pure tone thresholds of 35, 25, 30, 55 and 55 decibels at 500, 1000, 2000, 3000, and 4000 Hertz, respectively, in the left ear, and of 30, 30, 40, 25 and 30 decibels at 500, 1000, 2000, 3000, and 4000 Hertz, respectively, in the right ear. Speech discrimination scores were 76 percent in the left ear and 100 percent in the right ear. The diagnostic impression was mild to severe sensorineural hearing loss (greater in high frequencies), left ear, and mild, flat sensorineural hearing loss, right ear.

An April 2008 audiological examination conducted by Dr. King likewise reflects diagnoses of mild to severe sensorineural hearing loss, left ear, and mild high frequency sensorineural hearing loss, right ear. It was noted that the Veteran's hearing had "slightly improved" since the audiological test conducted in March 2007. 

In June 2009 audiological examination from Dr. King noted that pure tone results reflected "no worse than borderline normal hearing." It was also noted, however, that pure tone responses were initially elevated and that there was a large discrepancy between pure tone and speech results, along with normal otoacoustic emissions, which revealed that the Veteran's hearing loss was functional. 

A June 2009 treatment note from Dr. King again reflects a history of noise exposure and a diagnosis of hearing loss with left tinnitus and prior negative MRI. 

The Veteran underwent a VA audiological examination in October 2011. Audiometric testing revealed pure tone thresholds of 35, 30, 20, 35, and 35 decibels at 500, 1000, 2000, 3000, and 4000 Hertz, respectively, in the left ear, and of 25, 25, 25, 20 and 15 decibels at 500, 1000, 2000, 3000, and 4000 Hertz, respectively, in the right ear. Speech discrimination scores were 96 percent in both ears. The diagnostic impression was sensorineural hearing loss in the left ear and sensorineural hearing loss in the right ear. 

The VA examiner reviewed the Veteran's claims file and opined that his current hearing loss was not caused by or a result of an event in military service. The examiner reasoned that all hearing tests conducted during the Veteran's active and reserve military service showed normal hearing. Additionally, the examiner noted that a comparison of the Veteran's military hearing tests to the private testing and ENT notes (beginning in 1993), "demonstrates that any hearing loss the Veteran incurred developed after active military service." The examiner provided no further rationale for this conclusion. 

Analysis

The Board finds that the evidence supports granting the Veteran's claim of service connection for bilateral hearing loss. 

As an initial matter, the medical evidence confirms the Veteran currently has bilateral hearing loss disability, as defined by VA regulation. Specifically, with respect to the left ear, October 2011 VA and March 2007 private audiological examination findings satisfy the criteria set forth under 38 C.F.R. § 3.385. 

With respect to the right ear, the Board acknowledges that the most recent VA audiological examination conducted in October 2011 did not demonstrate a right ear hearing loss disability for VA purposes. However, audiological findings recorded at the March 2007 examination showed auditory thresholds of 26 dB or greater in at least three of the frequencies between 500 Hz and 4000 Hz. The Board notes that the requirement for a current disability is satisfied when a claimant has a disability either at the time a claim for VA compensation is filed, or at any time during the pendency of that claim. A claimant may be granted service connection even though the disability resolves prior to the Secretary's adjudication of the claim. McLain v. Nicholson, 21 Vet. App. 319, 321 (2007). In this case, the Veteran filed his claim for service connection in January 2006 and a March 2007 private audiological report reflects findings which satisfy the criteria set forth under 38 C.F.R. § 3.385. As such, the Board finds that the Veteran has a current bilateral hearing loss disability, as defined by VA regulation. 

Again, the Veteran has maintained that his bilateral hearing loss began during active service, including as a result of significant in-service acoustic trauma experienced while serving as an Improved Hawk firing section mechanic. The competent evidence supports his assertions concerning in-service incurrence of bilateral hearing loss due to significant acoustic trauma. For example, although his service treatment records show no complaints of or treatment for bilateral hearing loss at any time during active service, his DD Form 214 confirms that he served as a an Improved Hawk firing section mechanic for a period of three years. Thus, the Veteran's in-service noise exposure to significant acoustic trauma is presumed. (Note: the Veteran's personnel records also confirm that he served as a combat construction specialist and a dump truck driver with an Engineer Battalion during his subsequent period of service with the Army Reserves, from 1984 to 1987). 

The final issue for consideration here is whether there is evidence of a nexus between the claim in-service disease or injury (i.e., acoustic trauma) and the present disability (i.e., bilateral hearing loss). Again, this element can be established by a showing of continuity of symptomatology after service. See 38 C.F.R. § 3.303(b); see also Walker, supra. 

In this case, the medical evidence reflects that the Veteran was treated for complaints of hearing loss as early as 1993 - i.e., less than 10 years after his release from active duty service and approximately 6 years after his discharge from reserve service. Thereafter, the record shows consistent and ongoing complaints, treatment, and diagnoses of bilateral hearing loss. See, generally, Treatment Records from Dr. King, dated from 1993 to 2009. This includes multiple statements from the Veteran's longtime treating ENT, noting previous noise exposure in the military, and confirming that the Veteran's hearing loss (albeit, asymmetric) was consistent with his military noise exposure. See September 2002 Treatment Record from Dr. King. 

In addition to the medical evidence outlined above, the record also contains competent statements from the Veteran that he has experienced continuous hearing loss since service. The Board observes in this regard that a Veteran is competent to report symptoms that he experiences at any time because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994); Barr v. Nicholson, 21 Vet. App. 303, 309 (2007) (holding that, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation). Thus, the Veteran is competent to report that he has experienced continuous disability due to bilateral hearing loss since service. 

In so finding, the Board additionally notes that while being treated for sinus and eustachian tube problems in October 2000 and September 2003, the Veteran reported that he was exposed to acoustic trauma in-service and had resulting hearing loss/tinnitus. See Treatment Reports from Dr. King. Notably, these statements were made long before the Veteran filed his original claim of service connection for hearing loss in 2006. See Rucker v. Brown, 10 Vet. App. 67 (1997) (holding that lay statements found in medical records when medical treatment was being rendered may be afforded greater probative value; statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care). Such statements not only lend to the Veteran's credibility, but also provide probative lay evidence in support of his claim. 

The Board acknowledges that the August 2007 and October 2011 VA examiners opined that the Veteran's hearing loss was not related to service. However, the Board affords little probative value to these opinions. Indeed, in providing their opinions, both examiners relied heavily on the absence of in-service findings of hearing loss and largely discounted the Veteran's statements regarding his in-service noise exposure/continuous hearing loss since service and the lack of post-service occupational/recreational noise exposure. In this regard, the Court has held that the absence of contemporaneous service treatment records is not a bar to granting service connection. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (finding lack of contemporaneous medical records does not serve as an "absolute bar" to the service connection claim); and Barr, 21 Vet. App. at 303 ("Board may not reject as not credible any uncorroborated statements merely because the contemporaneous medical evidence is silent as to complaints or treatment for the relevant condition or symptoms"). The Court also has held that, when VA undertakes to provide a Veteran with an examination, that examination must be adequate for VA purposes. See Barr, 21 Vet. App. at 303. In this regard, the October 2011 VA examiner reasoned that a comparison of the Veteran's military hearing tests to the private testing and ENT notes (beginning in 1993), demonstrated that "any hearing loss the Veteran incurred developed after active military service." However, the examiner provided no further reasoning for this conclusion and failed to discuss why delayed onset of hearing loss was not a possibility in the Veteran's case. 

Given the internal inconsistencies and insufficient rationale in the August 2007 and October 2011 VA examination reports, the Board finds that they are inadequate for purposes of evaluating the Veteran's claim of service connection for bilateral hearing loss. See also Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (finding that medical opinions must be based on "sufficient facts or data").

In sum, the evidence of record demonstrates that the Veteran experiences current bilateral hearing loss which could be attributable to active service (and to some extent his reserve service), to include in-service acoustic trauma. The evidence supports the Veteran's assertions concerning in-service incurrence of bilateral hearing loss due to significant acoustic trauma while working as an Improved Hawk firing section mechanic. The Board recognizes that it must resolve any reasonable doubt in the Veteran's favor, to include whether he has experienced continuous disability due to bilateral hearing loss since his service separation. See 38 C.F.R. § 3.102. Accordingly, although there is evidence both for and against a finding of continuity of symptomatology for bilateral hearing loss since service, after resolving any reasonable doubt in the Veteran's favor, the Board finds that he experienced continuous disability due to bilateral hearing loss since his service separation. See Walker, 708 F.3d at 1331; see also 38 C.F.R. § 3.309(a). As such, service connection for bilateral hearing loss is warranted.


ORDER

Entitlement to service connection for hearing loss is granted. 


REMAND

The issues of service connection for right hip disability, and low back condition claimed as secondary to a right hip disability, are once again remanded because the medical evidence of record is inadequate for the Board to adjudicate these issues.

The Veteran's April 1980 entrance physical examination shows he had a preexisting hip condition. He was treated on multiple occasions during active service. In April 1985, during training with the Reserve Component, he fell off a truck and was treated in the emergency room with complaints of right hip pain; the pertinent diagnoses at the time included right trochanteric pain secondary to trauma and traumatic right hip bursitis. See USAR Service Treatment Records, April 1985. The Veteran reports that he has experienced near-continuous hip pain/problems since that time. 
.
In August 2011 the Board remanded these issues for medical examination because the evidence was inconclusive in regard to whether the Veteran currently had a right hip disorder. On remand, the Veteran had a VA medical examination in October 2011 in which the examiner's only diagnosis was "hip pain" but the examiner also stated, inconsistently, that current X-ray showed "unchanged mild bilateral osteoarthritis." The October 2011 examiner did not provide an opinion regarding etiology, so the file was returned for addendum opinion, which was issued in September 2012 by a person other than the original examiner. The September 2012 opinion stated that "the treatment on AD (active duty) was most likely the normal progression of the pre-existing right hip injury obtained during a cross country running incident that is well documented in the SMRs (service medical records)." However, the review opinion in September 2012 did not consider the April 1985 injury during Reserve Component service or the Veteran's account of chronic hip pain since then. None of the medical opinions of record have considered the Veteran's account of his symptoms.

In sum, the medical evidence that is currently of record is inconclusive in showing exactly what, if any, chronic right hip disorder the Veteran has, and if such disorder (if any) is a right hip due to or aggravated by service to specifically include the injury in April 1985.

Where a decision on one issue would have a "significant impact" upon another, and that impact in turn could render any review of the decision on the other claim meaningless and a waste of appellate resources, the two claims are inextricably intertwined. Henderson v. West, 12 Vet. App. 11, 20 (1998), Harris v. Derwinski, 1 Vet. App. 180 (1991). In this case, the issue of entitlement to service connection for a low back condition, to include as secondary to a right hip condition, is inextricably intertwined with the claim of service connection for a right hip disability, and the two issues are remanded together.
. 
Accordingly, the case is REMANDED for the following action:
1. Schedule the Veteran for an orthopedic examination by a VA examiner with appropriate expertise, to determine the nature and etiology of any current disabilities of the right hip and thoracolumbar spine found.

All pertinent symptomatology and findings must be reported in detail, and all indicated diagnostic tests and studies must be accomplished. 

The examiner must review the claims file. The examiner must also consider the Veteran's account of his relevant symptoms to be credible, unless such account is medically improbable or inconsistent with the objective medical evidence of record.

Following examination of the Veteran and review of the claims file, the examiner is to provide the diagnoses of any current disorders of the right hip and thoracolumbar spine, and provide an answer to the following questions:

Does the Veteran have a current disorder of the right hip that is at least as likely as not (i.e., at least a 50 percent probability) caused or aggravated by an accident or injury in service, to include the April 1985 accident? Alternatively, does the Veteran have a current disorder of the right hip that represents an increase in severity, permanent in nature, of the hip condition he had at the time he entered service? 

Does the Veteran have a current disorder of the thoracolumbar spine that is at least as likely as not caused or aggravated by an accident or injury in service? Alternatively, does the Veteran have a disorder of the thoracolumbar spine that is caused or aggravated by a right hip disorder? (If such aggravation is found, the examiner should also state, to the extent possible, the baseline level of disability prior to aggravation; this may be ascertained by the medical evidence of record and also by the Veteran's statements as to the nature, severity, and frequency of his observable symptoms over time.)

A complete rationale must be provided for any opinion expressed. If the examiner feels that the requested opinion cannot be provided without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the record or the examiner (i.e., there are insufficient facts on which to base an opinion or the examiner does not have the requisite knowledge or training), or by the state of general medical knowledge (i.e., no one could respond given medical science and the known facts).

2. When the above development has been completed, readjudicate the issues on appeal. If any benefit remains denied, issue a supplemental statement of the case (SSOC) to the Veteran and his representative and provide them with an adequate opportunity to respond before returning the appeal to the Board for further appellate review.

By this remand the Board intimates no opinion in regard to any final outcome warranted.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).




______________________________________________
JOHN H. NILON
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs