Citation Nr: 1714068 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-43 052 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUE

Entitlement to service connection for testicular cancer.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

M.W. Kreindler, Counsel


INTRODUCTION

The Veteran served on active duty from August 1994 to November 2001.

This matter came to the Board of Veterans' Appeals (Board) from an August 2009 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). 

The Board remanded this matter in May 2015 and June 2016.


FINDING OF FACT

The weight of the evidence is against a finding that testicular cancer manifested during service, manifested within a year of separation from service, or is otherwise related to the Veteran's active service.


CONCLUSION OF LAW

The criteria for an award of service connection for testicular cancer have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 

Regarding notice, the RO sent the Veteran letters in January and May 2009 pertaining to his claim of service connection for testicular cancer. The letters provided information as to what evidence was required to substantiate the claim and of the division of responsibilities between VA and a claimant in developing an appeal. Such letter also informed the Veteran of the type of information and evidence needed to establish a disability rating and effective date. 

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 

The Board finds that all necessary development has been accomplished with regard to the issue addressed in the decision below, to include substantial compliance with the Board Remands. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). Therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran was afforded a VA examination and addendums were proffered which will be discussed below. While acknowledging that the June 2015 VA opinion was not proffered by an oncologist as requested in the May 2015 Remand, the Board finds substantial compliance as the examiner has certification in Medical Toxicology. 06/18/2015 VA Examination. The examiner stated that this field deals with the production of cancers from any toxicological exposure in a June 2015 email correspondence. 

The Virtual folder contains the Veteran's service treatment records, identified post-service treatment records, records from the Social Security Administration (SSA) and lay contentions of the Veteran. No additional evidence has been identified by the Veteran with regard to the disabilities addressed below.

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim discussed below. 

Criteria & Analysis

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and 
(3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); 38 C.F.R. § 3.303. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Savage v. Gober, 10 Vet. App. 488, 495-97 (1997). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; 38 C.F.R. § 3.303(b). 

The second and third Caluza elements may also be satisfied under 38 C.F.R. § 3.303(b), by the submission of (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence showing post-service continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488, 495-97 (1997), overruled on other grounds by Walker v. Shinseki, 708 F.3d 1331, 1336 (Fed. Cir. 2013). An award of service connection based solely on continuity of symptomatology only applies to the listed chronic disabilities in 38 C.F.R. § 3.309(a). See Walker Shinseki, 708 F.3d at 1336-37.

With chronic diseases shown as such in service, or within the presumptive period after service, so as to permit a finding of service connection, subsequent manifestation of the same chronic disease at any later date, however remote, are service connected unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). 

For veterans who have served 90 days or more on or after December 31, 1946, certain chronic diseases, such as malignant tumors, are presumed to have been incurred in service if such manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a), 3.309(a). 

In adjudicating this claim, the Board must assess the Veteran's competence and credibility. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368- 69 (2005).

In Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007), the Court emphasized that lay testimony is competent if it pertains to matters that the witness has actually observed and is within the realm of the witnesses personal knowledge. See 38 C.F.R. § 3.159(a)(2) (stating that competent lay evidence means any evidence not requiring that the proponent have specialized education, training or experience; lay evidence is competent if it is provided by a person who has knowledge of the facts or circumstances and conveys matters that can be observed and described by a lay person).

Under the "benefit of the doubt" rule, where there exists an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the veteran shall prevail upon the issue. See 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

The Veteran asserts that during service in 1997 while stationed at Fort Benning he sustained an injury to his left testicle while parachuting. He reported that he injured his left testicle during a parachute jump when the left leg strap of his parachute harness pinched his left testicle between the straps. He stated that he reported the condition following the injury and swelling was noted. The Veteran reported that the left testicle remained swollen and at the time of his discharge he informed the examiner that his left testicle was still swollen. The Veteran reported that the condition began to worsen within the past 6-8 months and had doubled in size. 01/15/2009 VA 21-4138 Statement in Support of Claim

Service treatment records do not reflect any complaints or treatment for a swollen left testicle. An examination conducted for separation purposes is not of record. 05/19/2015 STR-Medical. The Veteran's DD Form 214 reflects that he received his parachutist badge. 

Correspondence dated in June 2013 from the Veteran's former spouse (married from 1999 to 2002) reflects her report that while she did not know the Veteran during his reported in-service injury, she recalls that during a fertility workup the Veteran was discovered to have low motility sperm which the doctor informed them could be due to his in-service accident. She recalls that the Veteran told her that during one of his jumps, one of the leg straps caused a trauma to one of his testicles. 10/07/2014 Buddy/Lay Statement.

While there is no medical evidence of an in-service injury to the left testicle, the Board finds the Veteran's assertions of a left testicle injury to be credible as such is consistent with his service, to include receipt of the parachutist badge. As such, the Board finds the in-service event/injury element of service connection has been established. The Board will now turn to evidence related to a current disability. 

A December 2008 ultrasound reflects a large soft-tissue mass extending from left (presumed) testicle to inguinal ring" with some hydrocele. 01/15/2009 Medical Treatment Record-Non-Government Facility. Testicular cancer was diagnosed in January 2009. 02/10/2009 Medical Treatment Record-Government Facility. 

In light of the foregoing evidence, the Board finds a current disability of testicular cancer has been established. Next, the Board will address the nexus element of service connection. 

An internet article entitled 'Testicle Tumors - Nonseminomatous' submitted by the Veteran in February 2009 reflects information regarding testicular cancer, which details risk factors including a history of testicular cancer in the contralateral testis, cryptorchidism (undescended testis), gonadal dysgenesis, prenatal exposure to high estradiol levels, exposure to chemical carcinogens, trauma, and orchitis. The article also states that the incidence of nonseminomatous germ cell tumors (NSGCTs) among active servicemen in the military almost doubled from 1988 - 1996. 02/24/2009 Correspondence. 

Correspondence dated in November 2009 from the Veteran's VA treating physician, Dr. E.K., reflects that he is being treated for stage IIIB T1N2M1aS2 non-seminoma testicular cancer. The correspondence stated that pathology demonstrated a mixed germ cell tumor (70% embryonal carcinoma 30% immature teratoma). The physician stated that the risk factors that predispose to testicular cancer continue to be studied and elucidated. During his service, he participated in various parachute jumps which resulted in trauma to his left testicle. The physician stated that it remains controversial whether testicular trauma is a causal factor for testicular cancer though it has been associated with its development. 11/16/2009 Medical Treatment Record-Government Facility.

A June 2015 notation from Dr. E.K. reflects that there has been an association with trauma and testicular cancer but no definite causal relationship in the medical literature. 06/23/2016 CAPRI at 1. 

In June 2015, the Veteran underwent a VA examination with a VA examiner certified in Medical Toxicology. The Veteran sustained multiple traumas to his testicles as a paratrooper in the service from the parachute opening shocks grabbing him in that area from his harness. He reported that he sustained trauma and had swelling in the left testicle with pain and he was examined in the service and they told him that his swelling was just a hydrocele but later he developed this cancer in that testicle which by the Veteran's report was the same left testicular mass he developed in service in the 1990's. Upon review of the records, the examiner opined that it would be only with resort to mere speculation to opine whether or not the Veteran's current testicular cancer is caused or aggravated to any degree by his military service including his testicular trauma. Although there are some studies reporting an association between chronic trauma and the development of testicular carcinoma, the current medical literature does not support a cause and effect relationship between trauma to the testicle and testicular cancer. Service treatment records are silent for any objective evaluation of the Veteran's left testicle such as an ultrasound, or even notation of a mass which could serve as evidence of a chronic left testicular abnormality during the Veteran's active duty military service. This would be useful in forming a nexus, since the nature of testicular cancer is that it can grow very slowly or be present several years prior to progressing to open manifestation, and any objective indication would serve this purpose. However, the currently available service treatment records are silent for any chronic left testicular symptom or diagnosis. Therefore, it is not possible to objectively determine from the currently available objective evidence whether or not the Veteran's reported subjective left testicular symptoms represented the early presence of his testicular cancer or whether or not his testicular trauma or any event of service caused or aggravated to any degree his current left testicular carcinoma. 06/11/2015 VA Examination.

A July 2016 addendum from the VA examiner reflects that the opinion of Dr. E.K. and treatment records were reviewed and the VA examiner explained that the opinion would have to remain speculative, even if it was conceded that the testicular trauma occurred in the course of the Veteran's paratrooper duties in his military service. However, if the literature subsequently demonstrated that paratroopers have an increased risk of testicular cancer above the general population, the Veteran's claim would need to be reevaluated. But, the examiner stated there were still no studies to show this. An additional opportunity could be a finding that the cancer literature begins to list testicular trauma as a prominent risk factor for testicular carcinoma (sometimes this may be issued prior to determination of the actual specific mechanism of cause and effect ), but the examiner has not been able to find this in any current searches.

The Board has given consideration to the Veteran's lay assertions, the treatise submission, and the VA opinions of record. Collectively, the VA examiner and the Veteran's VA treating physician agreed that while there could be a relationship between trauma and testicular cancer, there is no definite cause and effect relationship. The opinions of the examiners do not reach a threshold of at least as likely as not or more than 50 percent probability. The Board notes that a finding of service connection may not be based on a resort to speculation or remote possibility. See 38 C.F.R. § 3.102 (2016); see also Obert v. Brown, 5 Vet. App. 30 (1993) (stating that a medical opinion expressed in terms of "may" or "might" also respectively implies "may or may not" and "might or might not," and, by itself, is too speculative to rise to the level of "at least as likely as not" or otherwise establish a factual position that is in relative equipoise). 

Given the depth of the examination reports, and the fact that the opinions were based on a review of the applicable record and consideration of the pertinent facts - such as the Veteran's in-service injury/injuries and his subsequent medical treatment - the Board finds such opinions are important evidence that weighs against a linkage to service. Based on the current state of record, to include the June 2015 examination report/opinion and the July 2016 addendum report, the Board cannot reach a finding that the Veteran has testicular cancer that manifested in service or is otherwise due to his active service, to include his testicle injury. There is no contrary competent opinion of record considering the facts of the Veteran's case. 

The Board acknowledges the treatise evidence submitted by the Veteran pertaining to a relationship between testicular cancer and etiological factors. The Veteran has not presented any medical opinion evidence addressing the question of a relationship between his testicular cancer and trauma, but as the submitted medical literature afforded sufficient indication of the possibility of a link between testicular cancer and trauma, this triggered the necessity of obtaining a VA opinion. McLendon v. Nicholson, 20 Vet. App. 79, 81-83 (2006); see also 38 U.S.C.A. § 5103A (d)(2), 38 C.F.R. § 3.159 (c)(4)(i). As detailed hereinabove, the VA opinions obtained in response to the submitted treatise evidence were negative with regard to a relationship between his testicular cancer and in-service injury to the testicle. 

While medical treatise evidence can, in some circumstances, constitute competent medical evidence (see 38 C.F.R. § 3.159 (a)(1) (competent medical evidence may include statements contained in authoritative writings such as medical and scientific articles and research reports and analyses), both Federal regulation and case law preclude granting service connection predicated on a result of speculation or mere possibility. 38 C.F.R. § 3.102; see Utendahl v. Derwinski, 1 Vet. App. 530, 531 (1991) (stating that a medical treatise submitted by an appellant that only raises the possibility that there may be some relationship between sickle cell anemia and the veteran's fatal coronary artery disease does not show a direct causal relationship between the two disorders such as to entitle the appellant to service connection for the cause of the veteran's death). 

The Court has held that a medical article or treatise "can provide important support when combined with an opinion of a medical professional" if the medical article or treatise evidence discussed generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least "plausible causality" based upon objective facts rather than on an unsubstantiated medical opinion. See Sacks v. West, 11 Vet. App. 314, 316-17 (1998) (stating that medical article or treatise evidence, standing alone, may be sufficient if it discusses "generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based on objective facts rather than unsubstantiated lay medical opinion). Here, the Board finds that the treatise evidence submitted does not consider the facts of the Veteran's case, to include repeat trauma to the testicles from parachute jumps. Likewise, such document was not submitted in conjunction with an opinion from a medical professional. As such, the Board finds that it is lacks weight and is not probative of positive nexus to service and is outweighed by the June 2015/July 2016 opinions. 

The Board has given consideration to the lay evidence from the Veteran pertaining to his testicle injury, to include his assertions that he has a current disability due to service. As detailed, the Board finds that the Veteran sustained trauma during his in-service parachuting, but the Veteran does not otherwise have the requisite medical expertise to find that his current testicular cancer is due to the in-service injury. His opinion in this regard is not competent, given the complexity of the medical questions involved, to include the etiology of cancer. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (recognizing that orthopedic ACL tear is too medically complex for lay evidence to competent to diagnose); Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (stating that lay persons not competent to diagnose cancer); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (holding that rheumatic fever is not a condition capable of lay diagnosis). In light of his lay assertions and current diagnosis, a medical opinion was sought which was negative. The Board finds that the competent medical opinion from a person with specialized training and experience outweighs the lay contentions of the Veteran. The Veteran has otherwise provided no support for his assertions that his testicular cancer is due to active service.

The Board notes that malignant tumors are chronic diseases subject to special presumptive provisions under 38 C.F.R. §§ 3.307, 3.309. However, testicular cancer was not manifested within the first post-service year and thus such provisions are inapplicable here. As detailed, cancer was diagnosed in late 2009/early 2009, which is several years after his 2001 discharge from active duty. Thus, the evidence of record does not support a finding that a malignant tumor was shown within a year of separation from service. As a chronic disease under 38 C.F.R. § 3.309(a), credible evidence of continuity of symptomatology could enable a grant of service connection even in the absence of favorable nexus evidence. See Walker, 708 F.3d at 1336. Thus, the above evidence similar weighs against a finding of continuity of symptomatology and an award of service connection solely on this basis is not appropriate here. 

In conclusion, the most probative evidence is against a link between the claimed testicular cancer and active service. As the preponderance of the evidence is against the issue, reasonable doubt does not arise, and the service connection is denied. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Service connection for testicular cancer is denied.



____________________________________________
Paul Sorisio
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs