http://www.va.gov/vetapp16/Files4/1630480.txt

Citation Nr: 1630480 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 11-00 108 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma

THE ISSUE

Entitlement to service connection for a psychiatric disability variously claimed or diagnosed as a nervous disorder, schizoid personality, schizophrenic reaction, and post-traumatic stress disorder (PTSD). 

REPRESENTATION

Veteran represented by: Robert V. Chisholm, Attorney

ATTORNEY FOR THE BOARD

J. L. Prichard, Counsel

INTRODUCTION

The Veteran had active service from July 1972 to July 1974. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal of an October 2009 rating decision of the Muskogee, Oklahoma, regional office (RO) of the Department of Veterans Affairs (VA). 

The Veteran's appeal was previously before the Board in July 2014, at which time the Board found that new and material evidence had not been submitted to reopen previously denied claims for service connection for a psychiatric disability. 

The Veteran appealed the July 2014 Board decision to the United States Court of Appeals for Veterans Claims (Court). In a December 2015 Memorandum Decision, the Court reversed the Board's decision that new and material evidence to reopen the claim had not been submitted. The matter was then remanded for consideration of the Veteran's claim for service connection for a psychiatric disability on the merits. It has been returned to the Board for action consistent with the December 2015 decision. In light of the Court's 2015 Memorandum Decision, the Board has characterized the issue as on the merits and will address such below.

The Veteran, through his attorney, submitted additional medical evidence in June 2016. A waiver of initial RO review was included. In any case, as this decision grants the benefit sought, there is no harm to the Veteran. 

FINDINGS OF FACT

1. During service, the Veteran was seen for what was diagnosed as an acute anxiety reaction.

2. After discharge from service, the Veteran continued to receive treatment for a psychiatric disability that has been diagnosed as a schizoid type personality, schizophrenia, dysthymia, major depression with psychotic features, or a schizophrenic reaction. 

3. The Veteran's current psychiatric diagnoses include major depression with psychotic features and paranoid type schizophrenia; the medical evidence as to whether or not the current disability was incurred in or due to active service is in relative equipoise. 

4. The Veteran does not have and has never had a diagnosis of PTSD. 

CONCLUSION OF LAW

The criteria for service connection for a psychiatric disability that has been variously diagnosed as schizophrenia, dysthymia, major depression with psychotic features, or a schizophrenic reaction (but not PTSD) have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107(b) (West 2014); 38 C.F.R. §§ 3.03(a), 3.307, 3.309 (2015). 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

In this case, the Veteran was provided with complete VCAA notification in a September 2009 letter. He has also been provided with VA examinations, all VA treatment records have been obtained, and there is no indication of any outstanding private records. The Veteran has declined his right to a hearing. The duty to notify and assist has been met. Moreover, given the favorable outcome of this appeal, any failure in the duty to notify or duty to assist was harmless. 

Service Connection

The Veteran contends that the psychiatric examination he received during service was for the initial manifestations of his chronic psychiatric disability. 

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); 38 C.F.R. § 3.303. 

If psychoses become manifest to a degree of 10 percent within one year of separation from active service, it is presumed to have been incurred during active service, even though there is no evidence of psychoses during service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488 (1997), overruled on other grounds by Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). However, this method may be used only for the chronic diseases listed in 38 C.F.R. § 3.309. Walker, 708 F.3d 1331, 1336. 

In relevant part, 38 U.S.C.A. 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

The Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b). 

The service treatment records show that the Veteran had a normal psychiatric examination upon entering service in June 1972. He denied a history of any psychiatric symptomatology. 

Additional service treatment records show the Veteran underwent a psychiatric evaluation in June 1974 at the recommendation of the Legal Office while he was awaiting court-martial for unauthorized absence. He was said to have initially done well in the service but became increasingly frustrated with the rules and regulations as well as being the only minority in his area. He had then gone on unauthorized absence and been arrested by civilian authorities for burglary. The Veteran related he was very anxious about being in confinement. He stated that he had gone on unauthorized absence after being placed on restriction over a weekend. There was no motivation to return to service. On mental status examination, the Veteran was alert, oriented, and very tearful with no evidence of psychosis or organicity. He was frightened of confinement and having a nervous breakdown. The Veteran showed many passive-aggressive and anti-social features, and much manipulation. The diagnostic impression was acute anxiety reaction, and underlying passive-aggressive personality disorder with anti-social features. It was recommended that he be discharged from service. Subsequently, he was discharged in July 1974. 

The initial evidence of post-service treatment is a September 1980 letter from Dr. R. who states the Veteran has a history of a neurosis that he understood was first noted during service. His symptoms included bad dreams and hallucinations. The doctor noted that he had recommended that the Veteran seek treatment from a psychiatrist or psychologist. 

At a November 1980 VA examination, the Veteran expressed his belief that his nerves first began to bother him during service. Following service, the Veteran had gone to draftsman school. He had held several jobs in that capacity which he generally quit out of frustration. The examiner noted that he was extremely paranoid. The examiner found that the Veteran fit into the diagnostic category of a personality disorder, schizoid type. The prognosis was guarded. 

The Veteran was seen by a private psychiatrist in October 1981. The cover letter states that the examination was at the suggestion of Dr. R., who had been seeing the Veteran for his nervous condition since his release from service in 1974. The examination report states that the Veteran liked the first year and a half of service, but that things happened which changed his personality, including not getting the assignments he was promised, personal conflicts, and legal problems. Since service he had held 13 different jobs but was unable keep them because he believed people were against him. He was separated from his wife due to mental illness and inability to work. Veteran's present symptoms included paranoid delusions, antisocial behavior, periods of confusion, periods of panic, irritability over little things, nightmares, inability to concentrate, occasional hallucinations, preoccupation with paranoid thinking, and occasional uncontrollable behavior. The diagnosis was schizophrenic reaction - paranoid type, and the prognosis was guarded. 

March 1989 records show that the Veteran began mandatory substance abuse treatment after being incarcerated for driving under the influence. 

The Veteran was afforded a VA examination for PTSD in December 1996. He said he had been subjected to racial slurs during service, and that there had been a riot aboard his ship. His legal problems in service were noted. The Veteran claimed that he currently had dreams of being thrown overboard or people running into his office and shooting him. Following mental status examination and review of the claims file, the examiner found that the Veteran did not meet the full criteria for PTSD. The assessment was polysubstance abuse in partial remission and antisocial personality disorder. 

A June 2009 VA treatment record shows that the Veteran was seen for complaints of depression and anxiety. The duration of these complaints was said to be from 1974. After a review of his history and current symptoms, the diagnosis was dysthymia, chronic, and a history of passive-aggressive personality disorder with anti-social features. September 2009 VA treatment records include an assessment of chronic severe dysthymia. 

The Veteran was afforded a VA psychiatric examination in March 2012. The claims file was reviewed by the examiner. The examiner discussed the Veteran's family history as well as his military service. The Veteran described being under the authority of a racist, verbally abusive non-commissioned officer. His legal problems and unauthorized absences were noted. The Veteran's post-service work and personal history were also noted. He had received private psychiatric care as early as 1980. He also had an extensive legal history and had been incarcerated on three different occasions. The Veteran's symptoms included anxiety, sleep impairment, impaired judgment, and persistent delusions or hallucinations. The diagnoses were major depression with psychotic features, and alcohol dependence in remission. The examiner opined that it was less likely than not that the Veteran's current mental disability was the same as or a progression of the mental symptoms noted in service. The rationale was that the service treatment records indicated the Veteran was seen for an anxiety reaction related to possible incarceration. Currently, he was anxious but primarily depressed about his life. He also had psychotic features. The Veteran states that he began to have those during service, but in fact the in-service examination states that there was no evidence of a psychosis. Finally, the Veteran was not considered a good historian. 

The Veteran underwent a private examination in June 2016. The examiner noted that he was the former chief of psychiatry at a VA medical facility, that he had practiced psychiatry for 36 years, and that he had been a professor of psychiatry at a major university. The examiner reviewed the Veteran's claims file. He also met with the Veteran and conducted an extensive history and examination. The examination report described the Veteran's military service in great detail. His post-service work history and personal life were reviewed. Each of the Veteran's post-service psychiatric examinations was summarized. Lay statements that described the Veteran's symptoms were noted. At the conclusion of the interview and mental status examination, the diagnoses were schizophrenia, paranoid type; a history of polysubstance abuse, primarily alcohol; and mixed personality traits. The examiner noted that paranoid disorders occur on a spectrum ranging from suspiciousness and distrust through a paranoid personality disorder and ending in paranoid schizophrenia. The Veteran was noted to have normal functioning prior to entering the service. He continued to function well for the first part of service until he experienced some traumatic events. The Veteran reports experiencing hallucinations that began during service. The examiner noted that the in-service examiner had recommended discharge for fear that further distress might precipitate acute psychiatric hospitalization and long-term treatment. He opined that it was at least as likely as not that the Veteran's schizophrenic disorder was precipitated by events while on active duty in service. His symptoms had begun during service, and continued to the present day. 

The Board finds that entitlement to service connection for a psychiatric disability that has been variously diagnosed as schizophrenia, dysthymia, major depression with psychotic features, or a schizophrenic reaction is warranted. The evidence clearly shows that the Veteran began to experience psychiatric symptoms during service, and that he continued to experience these symptoms after discharge. The diagnosis in service was of a personality disorder, which is not considered a disease of injury within the meaning of applicable legislation for the purposes of service connection. 38 C.F.R. § 3.303(c) (2015). However, it must be determined whether or not these symptoms were actually the initial manifestations of his current psychiatric disability. 

There are two opinions that address whether or not the psychiatric symptoms that initially manifested in service are related to the Veteran's current disability. The March 2012 VA examiner opined that there was no relationship between the symptoms in service and the current disability. In part, the rationale was that the in-service examiner found that there was no evidence of a psychosis. In contrast, the June 2016 private examiner opined that the Veteran's schizophrenia was precipitated by the events in service. His rationale noted that the in-service examiner had recommended discharge for the Veteran partly out of fear that any further distress would lead to a worsening of symptoms and hospitalization. The Board notes that the two examiners both conducted extensive reviews of the Veteran's claims file, and accurately described his history. Both examiners interviewed and examined the Veteran. Finally, the examiners appear to be equally qualified to conduct a psychiatric examination. The Board finds that the evidence both for and against service connection for a psychiatric disability to be in equipoise. That being the case, the benefit of the doubt is resolved in favor of the Veteran, and entitlement to service connection is established. 

In reaching this decision, the Board notes that a claim for service connection for a psychiatric disability may encompass claims for service connection for all diagnosed psychiatric disabilities. Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). In this case, the Board notes that the grant of service connection does not include PTSD, as the Veteran has never been diagnosed with this disability. 

 (CONTINUED ON NEXT PAGE)

ORDER

Entitlement to service connection for a psychiatric disability that has been variously diagnosed as schizophrenia, dysthymia, major depression with psychotic features, or a schizophrenic reaction is granted. 

____________________________________________
P. SORISIO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs