Citation Nr: AXXXXXXXX
Decision Date: 05/28/21 Archive Date: 05/28/21

DOCKET NO. 190313-11827
DATE: May 28, 2021

ORDER

Entitlement to service connection for bilateral tinnitus is granted.

REMANDED

Entitlement to service connection for a back disability is remanded.

FINDING OF FACT

Resolving reasonable doubt in his favor, the Veteran's bilateral tinnitus disability had its onset in service and has persisted since.

CONCLUSION OF LAW

The criteria for service connection for bilateral tinnitus have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from March 1989 to November 1995 and from May 2008 to May 2009. 

A rating decision was issued under the legacy system in June 2018. In November 2018, the appellant opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a Rapid Appeals Modernization Program (RAMP) election form and selecting the higher-level review option. The Agency of Original Jurisdiction (AOJ) issued an AMA rating decision pursuant to RAMP in February 2019 which is the decision on appeal. 

In the VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD) dated March 2019, the appellant elected the Hearing option; therefore, the Board may only consider the evidence of record at the time of the November 2018 RAMP opt-in, as well as any evidence submitted by the appellant or his or her representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

The Veteran testified at a Board videoconference hearing before the undersigned in January 2021. A transcript of that hearing is associated with the claims file.

In the February 2019 rating decision, the AOJ found that VA Medical treatment records dated November 2017 show a diagnosis of tinnitus. Additionally, the AOJ found that a service treatment record dated February 2009 showed a report of back pain and treatment records received in January 2019 show a diagnosis of L4-L5 broad disc protrusion. The Board is bound by these favorable findings. See 38 C.F.R. § 3.140(c).

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claim of service connection for tinnitus, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. However, as the Board is remanding the claim of entitlement to service connection for a back disability for further development, this additional evidence will be considered by the RO in the adjudication of the back disability claim.

Service Connection

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of: (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table).

Service connection may be awarded on a presumptive basis for certain chronic diseases listed in 38 C.F.R. § 3.309(a) that manifest to a degree of 10 percent within 1 year of service separation or during service and then again at a later date. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331, 1337 (Fed. Cir. 2013). Organic disease of the nervous system (which we consider tinnitus to be) is considered to be a chronic disease under 38 C.F.R. § 3.309. Evidence of continuity of symptomatology may be sufficient to invoke this presumption if a claimant demonstrates (1) that a condition was noted during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007) (citing Savage v. Gober, 10 Vet. App. 488, 496 97(1997)); see 38 C.F.R. § 3.303(b).

The provisions of 38 C.F.R. § 3.303(b) indicate that with chronic disease shown in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease, at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes.

When the evidence for and against the claim is in relative equipoise, by law, the Board must resolve all reasonable doubt in favor of the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1991).

1. Entitlement to service connection for bilateral tinnitus.

The Veteran asserts that his current bilateral tinnitus disability is directly related to active duty service. 

During the January 2021 Board hearing, the Veteran testified that he was in Desert Storm and was in line units or combat line units for most of his first term of service from 1989 to 1995. He also testified that he was in close proximity to a bunker explosion which threw him 50 meters. The Veteran further testified that he was part of the artillery, LRSD (long range surveillance detachment), LRSP (long range surveillance patrol), and calvary units and provided communication support. Additionally, the Veteran testified that his overall occupation was communications, AM radio operator, or 21 Charlie single channel operator. The Veteran also testified that he was involved in sniper missions and was exposed to loud noises throughout the entire period of Desert Storm. He testified that during Desert Storm, he noticed the intense ringing in his ears particularly, after consecutively firing an M16 and an M40 which are high powered and loud firearms. The Veteran stated that sometimes they would get into 10 to 15 minute firefights and afterwards all he would hear is constant ringing in both ears. When describing the duration of tinnitus, the Veteran testified that the ringing got progressively worse and stayed with him and although he thought that it would go away, it never did. Furthermore, he testified that while in service he was also involved in heavy equipment transportation which required him to drive big riggs, 18 wheelers, and 577 tracks. See Hearing Transcript Dated January 2021. 

Review of the Veteran's service treatment records (STRs) reflects that they are silent as to any complaints of, or treatment for, tinnitus. 

The Veteran's DD214 notes that the Veteran received various decorations and medals for his active duty service to include the Southwest Asia Service Medal with 3 Bronze Service Stars, Overseas Service Ribbon, and the Kuwait Liberation Medal. The Board also notes that the Veteran was awarded the Sharpshooter Marksmanship Qualification Badge with Rifle Bar. See Certificate of Release or Discharge From Active Duty. 

The Veteran's military occupational specialties (MOS) were in the fields of radio operations and communications and motor transport. See Certificate of Release or Discharge From Active Duty.

The Veteran' post service treatment records include several notations that confirm that the Veteran has tinnitus. A October 2016 treatment record states that the Veteran has tinnitus. See CAPRI Records Received May 2018. Additionally, a treatment record dated April 2012 indicates that the Veteran has tinnitus which is possibly related to a blast injury. Id. 

The Board notes that there are no medical examinations of record that assess the Veteran's tinnitus disability. The Veteran was afforded the opportunity to have a VA examination but testified that he was unable to attend the examination appointment due to severe problems he was experiencing related to PTSD. See Hearing Transcript Dated January 2021. The Board notes the Veteran is currently service-connected for PTSD. 

The Board does not find the lack of a medical examination to assess the etiology of the Veteran's tinnitus disability fatal to the Veteran's claim, particularly given the testimony provided by the Veteran in addition to the other evidence of record. A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Lay persons may also provide competent evidence regarding a contemporaneous medical diagnosis or a description of symptoms in service which supports a later diagnosis by a medical professional.

The Board notes that ringing in the ears is the type of symptom that is readily amenable to lay observation as it is subjective to the claimant. Thus, the Veteran is competent to report his symptoms and their frequency. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The Veteran, as a layperson, is competent to report on matters observed or within his personal knowledge. Therefore, the Veteran is competent to testify as to the date of onset of his tinnitus symptoms, i.e., ringing in the ears. Moreover, tinnitus (or ringing in the ears) is the type of disability that may be established on the basis of lay evidence as it is subjective in nature. See Charles v. Principi, 16 Vet. App. 370 (2002).

The Board finds the Veteran's statements as to the onset of his tinnitus disability to be competent and credible. The Veteran has provided very detailed testimony regarding his exposure to loud hazardous noise while in Desert Storm and during his second period of service when driving military vehicles with large noise outputs. Medical treatment records, correspondence of record, and the Veteran's own statements and testimony note his continued reports detailing his tinnitus and his assertions that he was exposed to hazardous sound from the artillery, explosions, military vehicles, and other weapons in service. Nothing in the record contradicts his statements, and his statements are generally consistent with the circumstances and conditions of his service. The Board finds the Veteran's statements are credible and probative.

Based upon the Veteran's noise exposure in service, and reports of continuous symptoms since service, the Board finds tinnitus is a result of military service. With resolution of reasonable doubt in the Veteran's favor, service connection for tinnitus is warranted. See 38 U.S.C. § 5107, 38 C.F.R. § 3.102.

REASONS FOR REMAND

2. Entitlement to service connection for a back disability.

The Veteran asserts that his back disability is directly related to service. Specifically, the Veteran asserts that there is documentation in his service treatment records of back issues and there has been a continuum of care since he was discharged in 2009. The Veteran also states that he had surgery on his back to have the L4 and L5 removed in September of 2018. See Notice of Disagreement Received November 2018. 

During the January 2021 Board hearing the Veteran testified that he initially injured his back during Desert Storm when a bunker exploded and threw him about 50 meters away causing him to fall down on his back. The Veteran explained that he was part of the LRSP team and, in that capacity, he was required to go out to the bunkers to look for intel and this particular bunker was booby trapped with a large ammo dump in it. Additionally, the Veteran stated that while in Desert Storm a mortar round fell within 15 meters of his position and disoriented him and knocked him back. The Veteran testified that he was in the Field Artillery Brigade and was assigned to LRSP patrol due to his sniper training. Additionally, the Veteran testified that while in Desert Storm he had to bury generator trailers in a 45-degree incline and when doing so he pulled a skeletal muscle as he tried to keep the generator from hurting other members. The Veteran testified that he fell out of a deuce and a half and was drug by a helicopter. He stated that the pain intensified and did not go away. The Veteran stated that he immediately went to medic because he felt something pop in his back. With respect to the STR dated February 2009 that showed a report of back pain, the Veteran testified that he was doing a simulation of a rollover where a Humvee body was elevated about six feet off the ground with no wheels and while inside one of the soldiers started rotating it before the Veteran was secure, causing him to land on his back squarely on the gearshift. The Veteran stated that as a result he went to medical the next day and was treated with Motrin. The Veteran testified that the back pain got worse and he went to the VA hospital for treatment. Additionally, he testified that the VA hospital gave him X-rays and showed him the extensive damage to his L4-L5 and C4 and C5. The Veteran also testified that the back pain continued to get progressively worse and his L4 completely disintegrated and caused permanent nerve damage. The Veteran also testified that the L5 had to be replaced because it was also broken into many pieces. Moreover, the Veteran testified that he was unable to do strenuous activity due to the back issues that he developed in the military. The Veteran also testified that the same areas that he felt pain after leaving the military is the same area that he felt pain while in the military, but it is progressively worse. Additionally, the Veteran testified that while in service, he went on road marches with armor that weighed 80 pounds, plus a 100 to 120 pound rucksack and marched for 12-15 miles a day and this caused even more damage to his back. See Hearing Transcript Received January 2021. 

The Veteran's service treatment records (STRs) document the Veteran's back-related issues in service. A March 1992 treatment note indicates that a physician assistant prescribed Indocin and Norflex for back pain. The treatment note also states that the Veteran was given Bengay and instructed to put heat to his back daily. Other service treatment notes dated February 2009 indicate that the Veteran experienced back symptoms and back-related pain. 

The Veteran's post service treatment records include numerous notations related to symptoms, complaints, and treatment for back issues. In a treatment note dated January 2013 it is noted that the Veteran complained of low back pain radiating into his left leg. This treatment note also states that the Veteran experienced multiple traumas due to explosions and having been dragged 150 feet by a helicopter associated with an equipment malfunction. A treatment note dated September 2013 states that the Veteran was triaged over the phone for complaints of chronic severe lower back pain. A March 2017 treatment note states that the Veteran's chronic pain in his back is intermittent. Another March 2017 treatment record states that the Veteran experienced lower and upper back pain. Notes from a February 2017 physical examination state that the Veteran was advised to follow up on back issues. See CAPRI Records Received April 2018. A March 2017 treatment record states that the Veteran reported that he saw a pain management specialist at a VA medical center and was afforded an MRI of his ack. The Veteran also reported that the pain is worst in his lower back. See CAPRI Records Received May 2018. A March 2018 treatment record states that the Veteran experienced chronic low back and bilateral lower extremity pain-dysesthesia and progressive weakness with walking. See CAPRI Records Received May 2018. The Board notes that the record contains several more notations regarding ongoing back issues.

A report dated November 2017 from an integrative pain management consultant (specialist) states that the Veteran has a long-standing history of impairing chronic complaints since 1992 associated with military combat. The specialist stated that the Veteran described multiple events including blast exposure and shrapnel injury. In addition, it is noted that the Veteran reported being dragged by a helicopter tethering cord during an incident where once the Veteran reached the ground the tethered cord would not release. The specialist noted that the Veteran reported that as the helicopter resumed horizontal movement the Veteran was dragged 200 feet. Moreover, the specialist noted that the Veteran complains of chronic baseline constant low back and anterior lower extremity pain including dysesthesia extending to both the dorsum and particularly the plantar feet. The specialist stated that the low back pain is most impairing but the lower extremity symptoms are also pervasively compromising. The specialist also noted that in addition to the baseline constant pain the levels of back and leg pain also intermittently vary and are positionally mediated. Additionally, it is stated that he has a broad-based L4 disc protrusion which extends bilaterally into the foramen. It was further noted that there is severe central stenosis at this level which correlates to described weakness with prolonged standing or walking. See CAPRI Records Received May 2018.

In this matter, the Board finds that a remand is warranted to cure a pre-decisional duty to assist error. The requirements to secure a VA examination are a low bar. VA is required to provide examination when there is insufficient medical evidence to decide the claim, but the record otherwise contains competent evidence of a current disability or recurrent symptoms, evidence of an in-service event, and evidence of an indication of a nexus. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006); Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010); 38 C.F.R. § 3.159(c)(4)(i). Here, the Veteran has a present back disability and there is evidence indicating it could be related to active duty service. As such, the McClendon requirements are satisfied, and a VA medical opinion is required. See also Bardwell v. Shinseki, 24 Vet. App. 36 (2010). The AOJ's failure to obtain this VA medical opinion prior to the rating decision on appeal is a pre-decisional duty to assist error. 

The matters are REMANDED for the following action:

Schedule the Veteran for a VA examination to determine the nature and etiology of any current back disability. The claims file, including a copy of this remand, must be provided to the examiner in conjunction with the requested opinion. All findings should be reported in detail. The examiner should address the following:

(a.) Please identify any back disability by (1) diagnosis or (2) functional impairment. The examiner's attention is drawn to the report located in the VA treatment record dated November 2017 from an integrative pain management consult that indicates a diagnosis of broad-based L4 disc protrusion.

(b.) As to each back disability identified, the examiner must opine whether it is at least as likely as not (a 50 percent or greater probability) that such disability had its onset in service or is otherwise related to service. In rendering their medical opinion, the examiner must consider and address the following service treatment records: (1) a March 1992 treatment record indicates that a physician assistant prescribed Indocin and Norflex for back pain; (2) the March 1992 treatment note also states that the Veteran was given Bengay and instructed to put heat to his back daily; (3) a February 2009 treatment note that indicates that the Veteran experienced back symptoms and back related pain. 

The examiner is must also consider and address the Veteran's lay statements, including his in-service incidents related to his back, such as blast exposure and shrapnel injury, as well as an incident in which he was dragged 150 feet by a helicopter tethering cord but could not release once he reached the ground (see November 2017 Integrative Pain Management Consult in CAPRI records received May 2018). In providing this and all other opinions, the examiner is reminded that the Veteran is competent to report continuous symptoms since service, and such reports must be specifically acknowledged and considered in formulating any opinion. If the examiner rejects the Veteran's reports regarding current or past symptoms, the examiner must provide a reason for doing so.

Rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

 

 

Tiffany Dawson

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board J. Dorsey-Kwansa, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.